**BOARD OF TRUSTEES, ROBERT H. CHAMPLIN MEMORIAL LIBRARY**

v.

**RHODE ISLAND STATE LABOR RELATIONS BOARD et al.**

Nos. 95–240–M.P., 95–223–M.P.

Supreme Court of Rhode Island.

May 15, 1997.

William E. Smith, Providence, for Plaintiff.

Edward T. Hogan, East Providence, Marc B. Gursky, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

These petitions for certiorari require us to ponder the legal standards to be applied in determining whether various types of municipal employees should be included within a proposed collective-bargaining unit. Petitions have been filed with this court by both the plaintiff, the Board of Trustees of the Robert H. Champlin Memorial Library (trustees), and the defendants, Rhode Island State Labor Relations Board (board) and the Teamsters Union Local No. 64 (union). Specifically the petitions question whether various supervisors, part-time employees, and a secretary were properly included in or excluded from a proposed collective-bargaining unit for the employees of the Robert H. Champlin Memorial Library (library).

### Facts and Travel

In September 1993 the union filed a petition with the board, seeking to represent a collective-bargaining unit comprising the library's nonsupervisory employees. Thirteen employee signature cards accompanied the petition, and when verified, they were enough to warrant an election.[1] However, the trustees questioned whether certain employees, whose interests the union sought to represent, were eligible for inclusion in a collective bargaining unit. In particular, the trustees opposed including certain library personnel known as the Head of Reference Services, the Head of Children's Services, the Reader's Advisor and Interlibrary Loan Manager, and the Circulation Department Manager. The trustees claimed that these full-time professionals were supervisors and thus prohibited from joining the collective-bargaining unit. The trustees also opposed including the secretary to the library's executive director, alleging that she held a confidential position. Finally they objected to the inclusion of seven part-time library employees.

For several days the board held hearings to determine whether these library employees were eligible to join the proposed collective-bargaining unit. In May 1994 the board issued a detailed written decision ordering an election by secret ballot to be held within ninety days and permitting all the challenged employees to vote to adopt a collective-bargaining representative. The employees conducted a timely election and voted in the union, which was later certified as the employees' collective-bargaining agent.[2] Thereafter, the trustees filed an action in Rhode Island Superior Court seeking, inter alia, to set aside, to reverse, or to modify the board's decision and to have the election results nullified. A Superior Court hearing justice determined that although the library's four full-time employees performed some supervisory functions, they could still bargain collectively with the secretary and the custodian as "long as the part-time employees, and any other 'rank-and-file' workers supervised by members of this collective bargaining unit are not included in the unit." On this basis the hearing justice determined that "no conflict will arise." Because the four full-time employees, the custodian, and the secretary had voted in favor of the union and because no one had voted against it, the court concluded that a new election would not be necessary. Consequently the court ordered the library to "proceed to bargain in good faith forthwith" with the union.

After this ruling, both sides filed petitions for certiorari. The trustees argue that both

---

1. The thirteen employees who submitted signature cards included four full-time professional employees, seven part-time employees, the custodian, and the secretary to the executive director.

2. Twelve employees were eligible to vote under the board's election directive: the four full-time employees, the secretary to the executive director, the custodian, and six of the seven part-time employees. Of this number, eleven voted in favor of the union and one employee did not vote.

the board and the Superior Court erred by using the wrong legal standard in determining whether the library's four full-time employees were supervisors. Relying upon our prior decisions in this area, the trustees contend that when assessing the status of these full-time employees, the board and the Superior Court should have used the federal definition of the term "supervisor" contained in 29 U.S.C. § 152(11) of the National Labor Relations Act (NLRA). They also urge us to reverse the Superior Court's determination that the executive director's secretary was not a confidential employee.[3] The board and the union, on the other hand, concur with the ultimate result reached by the court with respect to the four full-time employees and the secretary but ask us to reverse that portion of the court's decision that barred the part-time employees from the collective-bargaining unit. Additionally they take issue with the Superior Court's use of a "conflict of interest" standard to determine whether the full-time employees were supervisors. Instead they urge us to endorse the board's standard of excluding only top-level supervisory employees from the collective-bargaining unit, claiming that such an exclusion maintains the crucial balance of power between labor and management.

We shall address separately whether these three categories of employees should be included in the proposed collective-bargaining unit, supplementing our discussion when necessary with additional facts gleaned from the decisions of the board and the Superior Court.

## I

### Standard of Review

In reviewing certiorari petitions filed under the Administrative Procedures Act, we do not weigh the evidence in the record but ascertain only whether errors of law have been committed and whether any legally competent evidence exists to support the ac-

tions of the reviewing court. *See* G.L.1956 § 42–35–16; *Barrington School Committee v. Rhode Island State Labor Relations Board*, 608 A.2d 1126, 1138 (R.I.1992).

## II

### Analysis

#### A. The "Supervisory" Employees

General Laws 1956 § 28–9.4–1 declares "the public policy of this state to accord to municipal employees the right to organize, to be represented, to negotiate, and to bargain on a collective basis with municipal employers." A municipal employee is defined in § 28–9.4–2(b) as

"[a]ny employee of a municipal employer * * * except:

* * *

(4) Confidential and supervisory employees;

* * *

(7) Employees of authorities * * * not under direct management by a municipality who work less than twenty (20) hours per week. The state labor relations board shall, whenever requested to do so, in each instance, determine who are supervisory, administrative, confidential, casual, and seasonal employees."

In determining that the four full-time employees of the library were not "supervisory" employees, the board relied on a 1973 policy statement it had issued that excluded only certain "top-level" supervisory personnel from any state employee bargaining unit. This policy, in relevant part, reads:

"[W]e are constrained to conclude that with the exception of those supervisory personnel that we categorize as being 'top level supervisory personnel' supervisors do have the right to organize and bargain collectively. We do not define who would be included in such a unit because this would be the function of the Board only

---

**3.** The trustees do not claim that the Superior Court erred in excluding the library's part-time employees from the collective-bargaining unit. Rather they have asked us to reverse the Superior Court's inclusion of the four full-time employees and the secretary in the unit. The trustees

then argue that since "a bargaining unit may not contain only one employee," we should reverse the board's order certifying the union as the collective-bargaining representative for the library's employees.

when specific factual cases have been presented to the Board for such a decision. However, we do feel that a top level supervisor would be one whose duties and tasks and functions are purely supervisory in nature and who of necessity partakes more of the nature of management and policy-makers than of rank and file."

The board also cited a 1979 policy it adopted in an effort to distinguish a supervisor from a rank-and-file employee. The board believed that this policy was in conformity with its statutory power to define who is a "supervisory" employee under § 28–9.4–2(b)(7). In pertinent part this policy provides:

"8. In determining whether a supervisory position should be excluded from a rank and file unit, the board shall consider, among other criteria, whether the principal functions of the position are characterized by not fewer than two of the following:

(a) Performing such management control duties as scheduling, assigning, overseeing and reviewing the work of subordinate employees;

(b) performing such duties as are distinct and dissimilar from those performed by the employees supervised;

(c) exercising judgment in adjusting grievances, applying other established personnel policies and procedures and in enforcing the provisions of a collective bargaining agreement; and

(d) establishing or participating in the establishment of performance standards for subordinate employees and taking corrective measures to implement those standards." Amended Policies of the Rhode Island State Labor Relations Board ¶ 8 (received Dec. 17, 1979), 8 C.R.I.R. 16 020 003, 003–004 (1995).

The board ultimately concluded that none of the four full-time employees "routinely or on a day-to-day basis perform[ed] such duties as can be classified as supervisory or related to top level supervisory employees." In particular the board noted the lack of authority in each employee to implement various supervisory functions, such as imposing a final disciplinary action, participating in collective-bargaining negotiations, enforcing the provisions of a collective-bargaining agreement (if one were to be executed), settling grievances of employees, hiring or firing employees, and establishing or participating in the establishment of performance standards for subordinate employees or taking corrective measures to implement such standards. Finally the board determined that none of the four full-time employees qualified as "such a top level supervisor" that they should be excluded from the proposed bargaining unit.

The Superior Court reached the same conclusion but for different reasons. The hearing justice began by rejecting the board's 1973 and 1979 policy statements in accordance with a previous Superior Court decision. There, the court proposed as an alternative that the board "focus on the potential for conflict of interest in deciding whether an employee should or should not be permitted to bargain collectively with other employees." Finally, the hearing justice observed that notwithstanding this previous Superior Court ruling, the board continued to apply its "top-level supervisory" test. The hearing justice then engaged in a conflict-of-interest analysis. After determining that the four full-time employees "exercise some supervision over some [part-time] employees," the hearing justice examined the relationship among the four full-time employees, the secretary, the custodian, and the part-time employees and concluded:

"There is absolutely nothing in the record to show that any of these four 'Department Heads' supervises each other or the Secretary or Custodian. While their loyalty vis-a-vis the labor of part-time aides and volunteers working in their respective departments of the Library must be exclusively to management, and not to their supervisees, no reason exists why they cannot collectively bargain with management for their common interests together with the Secretary and the Custodian. All of them are supervised by 'top-level supervisors', on the behalf of the Board of Trustees. So long as the part-time employees, and any other 'rank-and-file' workers supervised by members of this collective bargaining unit are not included in the unit, no conflict will arise, which the exclusion of 'supervisory' employees is designed to avoid."

Thus the hearing justice apparently believed that even though the four full-time employees exercised some supervisory control over the part-time employees, they could still bargain with one another and with the secretary and custodian since there would be no supervision (and therefore no conflict of interest) occurring within that proposed bargaining unit.

■ We believe that the legal standards used by both the board and the Superior Court in determining who qualifies as a supervisor and thus is ineligible to be part of this bargaining unit are inconsistent with the mandate of § 28–9.4–2(b)(4) that *all* supervisory employees must be excluded from collective bargaining. Rather, in determining whether these employees were supervisory personnel and therefore subject to exclusion from the proposed collective-bargaining unit, the board and the Superior Court should have applied the definition of the term supervisor that is set forth in the NLRA, 29 U.S.C. § 152(11).

We have previously expressed our willingness to look to federal labor law for guidance in resolving labor questions such as the one that is now before us. *See Fraternal Order of Police, Westerly Lodge No. 10 v. Town of Westerly,* 659 A.2d 1104, 1108 (R.I.1995); *State v. Local No. 2883, AFSCME,* 463 A.2d 186, 189 (R.I.1983). Under the provisions of 29 U.S.C. § 152(11), "supervisor" is defined as

"any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, *if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature,* but requires the use of independent judgment." (Emphasis added.)

We have cited this definition with approval in several of our previous labor-law decisions. *Westerly Lodge No. 10,* 659 A.2d at 1108; *Local No. 2883,* 463 A.2d at 189–90 n. 4.

Nonetheless, the union and the board argue that in both *Local No. 2883,* and its later reaffirmance in *Westerly Lodge No. 10,* we adopted the board's 1973 policy statement as the means to define the term "supervisor." We disagree. In *Local No. 2883* we determined that a superintendent of a state school for the mentally handicapped was excluded from a collective-bargaining unit because his duties rendered him "unquestionably a supervisory and/or managerial employee." *Local No. 2883,* 463 A.2d at 191. In reaching this decision, we examined the policies underlying the NLRA's exclusion of managers and supervisors, as articulated by the United States Supreme Court in *NLRB v. Bell Aerospace Co., Division of Textron, Inc.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), and later in *NLRB v. Yeshiva University,* 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980). We noted that the inclusion of managerial and supervisory employees in a collective-bargaining unit would create a conflict of interest that would upset the delicate balance of power between management and labor. *Local No. 2883,* 463 A.2d at 190 (discussing *Bell Aerospace* and *Yeshiva University* ). We then acknowledged that the board's 1973 policy statement was "clearly * * * similar to and as persuasive" as this federal policy because the board's rationale for excluding top-level supervisory personnel was to avoid " 'disrupt[ing] the functions of state government and * * * put[ting] the state * * * on an unequal footing as far as equality of bargaining power is concerned.' " *Id.* at 191. However, in determining that the school superintendent in *Local No. 2883* should be excluded from the collective-bargaining unit because he was a "supervisory and/or managerial employee," we never expressly endorsed the board's distinction between top-level supervisory personnel and other supervisors as the proper definitional standard under § 28–9.4–2(b)(4). Indeed, after noting the federal definition of a supervisor set forth in 29 U.S.C. § 152(11), we stated that "[m]anagers and supervisors are those who carry out and often help formulate the employer's policies." *Local No. 2883,* 463 A.2d at 191.[4] We then simply reviewed the super-

---

4. We do not agree that in *State v. Local No. 2883,*      *AFSCME,* 463 A.2d 186 (R.I.1983), this court

intendent's duties and ultimately concluded that, as would be consistent with the above-referenced federal and state laws, it was proper to exclude him from the collective-bargaining unit.

■ Over a decade later in *Westerly Lodge No. 10,* we reaffirmed our ruling in *Local No. 2883* that managerial and supervisory employees may not engage in collective bargaining. 659 A.2d at 1107. However, our reliance on the federal definition of the term "supervisor" in the *Westerly Lodge No. 10* case was even more explicit than it was in *Local No. 2883.* In determining that police lieutenants and captains in the town of Westerly were prohibited from participating in collective bargaining because of their status as supervisory or managerial personnel, we cited the federal statutory definition of the term "supervisor" as well as the definition of the term "managerial employee" as referenced by the United States Supreme Court in the *Yeshiva University* case. We then concluded that

> "[t]he duties and responsibilities of the Westerly police lieutenants and captains cause them to *fit the definitions of supervisory or managerial personnel* and thus were rightly excluded from the collective-bargaining process." 659 A.2d at 1108. (Emphasis added.)

Given our decision in *Westerly Lodge No. 10,* it is our opinion that the board and the Superior Court in the present case should have evaluated the status of the four full-time employees in light of the definition of the term "supervisor" that is set forth in 29 U.S.C. § 152(11). Applying this standard to the factual record below leads us to believe that competent evidence exists to support the conclusion that any exercise of supervisory authority by these four full-time library employees was of a "merely routine or clerical nature" and that none of them exercised the

type of supervisory control contemplated by 29 U.S.C. § 152(11). The board extensively detailed the job specifications of each employee and concluded that their overall supervisory duties were "clerical" or "ministerial." It is unnecessary for us to reiterate each of the board's findings. We note only that none of the library's four full-time employees had the authority to hire or to fire subordinates, to discipline them, or to adjust employee grievances. Further, two of the four testified at the hearings that at that time there were no other employees even working in their departments. Thus there is record support for the conclusion reached by the board and the Superior Court that, notwithstanding their titles, these four department heads were not functioning as the type of supervisory personnel who would be excludable from the proposed collective-bargaining unit. Therefore, even though both the board and the Superior Court failed to use the correct legal standard in evaluating whether these library employees qualified as "supervisors," we affirm the Superior Court's inclusion of these four employees in the proposed collective-bargaining unit for the library. *See Jordan v. Jordan,* 586 A.2d 1080, 1085 (R.I.1991) ("[i]t is well settled that this court will uphold a correct decision notwithstanding the reasoning upon which it rests").

### B. The Secretary

■ The trustees have also urged us to reverse that portion of the Superior Court's decision that included the secretary to the executive director in the proposed collective-bargaining unit on the grounds that the evidence established that she was a "confidential employee" and thus subject to exclusion from the unit under § 28–9.4–2(b)(4).

In *Barrington School Committee,* we recognized that the rationale for excluding confi-

adopted the board's top-level supervisor policy as the correct legal definition of who is a "supervisory employee" under G.L.1956 § 28–9.4–2(b)(4). The only approval we gave to the board's policy statement in that case was to note that the underlying rationale for such a policy was consistent with the exclusion of supervisors under federal labor law. However, not only did we cite to the NLRA's definition of "supervisor" but we also made clear throughout that decision

that, to be consistent with the applicable federal and state statutory provisions, *all* managerial and supervisory personnel were to be excluded from collective bargaining. Moreover, the board's statutory power to define who is a "supervisory" employee under § 28–9.4–2(b)(4) cannot be relied upon by the board to justify its inclusion of personnel within collective bargaining units who are considered to be supervisory (albeit not "top-level") even by the board itself.

dential employees from a collective-bargaining unit was akin to that of supervisory and managerial employees in that

> "[i]t would be unfair for an employee who is entrusted with advance knowledge of his or her employer's labor relations policies to be able to share this information with a union that serves as that employee's collective bargaining representative. If a union were able to obtain such one-sided access to management's sensitive labor relations data, it would have a substantial and unwarranted advantage in its dealings with management." 608 A.2d at 1136.

In determining whether an employee's position is confidential, we adopted the "labor-nexus" test developed by the National Labor Relations Board. Under this test two different categories of municipal employees can qualify for the confidential status that will exclude them from a collective-bargaining unit. The first comprises " 'those confidential employees "who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." ' " *Id.* The second category consists of employees who in the exercise of their regular duties " ' "have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations." ' " *Id.*

After hearing the testimony of the secretary and the executive director, the board determined that (1) the *trustees* (as opposed to the executive director) were the ones responsible for formulating, determining, and effectuating management policies and (2) because the secretary did not work for the trustees, she did not "assist or act in a confidential capacity" to them. Therefore, she was not a first-category confidential employee. The board also found that the secretary could not be considered a confidential employee under the second category because she devoted more than half her working day to technical services, which have no elements of confidentiality attached to them. Specifically the board noted that she did not type

confidential letters (most letters were typed by the director herself) and that any records she kept in her office were open to public inspection.[5] Further, the board dismissed the trustees' argument that if unionization and collective bargaining occurred in the future, the secretary could then be exposed to confidential information. Considering such an assertion "speculative," the board concluded that the secretary's current position was the determinative factor and that her position, "as it currently exists, is not one of a confidential nature." The Superior Court reiterated many of these same points, applied the labor-nexus test, and affirmed the board's decision.

Upon this perusal of the record, we believe that legally competent evidence exists to support the decision of the Superior Court that the secretary was not a confidential employee under the labor-nexus test. The board's findings clearly establish that the secretary's duties do not involve matters of such a confidential nature as to fall within the scope of the labor-nexus test. Therefore, we uphold the hearing justice's inclusion of the secretary in the proposed collective-bargaining unit.

### C. The Part-time Employees

■ The trustees argue that the part-time employees, all of whom worked fewer than twenty hours per week, should be excluded from the collective-bargaining unit under § 29–9.4–2(b)(7). This section excludes from the definition of municipal employees those "[e]mployees of authorities * * * not under direct management by a municipality who work less than twenty (20) hours per week." Because the town of West Warwick does not directly manage the library and its employees, the trustees contend that the library's part-time workers were not municipal employees entitled to bargain collectively.

The board concluded that the library's part-time employees could participate in the proposed collective-bargaining unit because the library was not "such an independent

---

**5.** The secretary testified that she was responsible for " 'spread sheets, reports, trustee's meetings, [and] regular secretarial work' " such as making copies and typing letters. With respect to the

trustees' meetings, she stated that her only duty was to photocopy the minutes of the meeting and not to type them.

authority from the Town of West Warwick so as to require [their] exclusion." Specifically, the board determined that the town provided and approved annual budget appropriations to the library that constituted a substantial portion of the library's operational funds, that additional funds for improvements to the library were obtained through bonds issued and secured by the town, that all employees were paid by checks issued by the town, and that full-time employees were members of the town's retirement plan and health-care program. In sum, because of the library's fiscal reliance upon the town, the board could find no evidence that the trustees maintained any independent authority apart from the town.

The Superior Court disagreed with this reasoning. The court determined that, pursuant to G.L.1956 chapter 4 of title 29, entitled "Free Public Libraries," the library "*must*, as a matter of law, *not* be under the direct management of the municipality" in which it is located. The court reached this determination on the basis of the language in several of these statutory provisions. First, pursuant to § 29–4–5, the town is required to elect a board of trustees. These trustees have exclusive possession of and control over the library and its funds, whether they are obtained from private donors or from municipal appropriations. *See* §§ 29–4–6 and 29–4–7. In addition, pursuant to § 29–4–7, the town is obliged to pay any and all library bills, including its payroll obligations, that are presented to the town by the trustees (as long as there are funds available to pay them). Finally the court found that the town's actions in cutting checks and in extending employee-benefit services to library employees are performed on behalf of the library and not because the town has any management authority over library employees.

We can discern no error in the Superior Court's decision on this issue. We agree with the trial justice's determination that as a free public library the library was under the trustees' direct management. Although the town's financial support of the library is mandated by law, its provision of employee benefits and its signing of the employees' paychecks do not constitute the type of direct management by the town that the statute requires for such employees to escape part-time status. The trial justice concluded that there was "[n]o evidence whatsoever * * * to show that the * * * Town had ever even tried to exercise any management, let alone *direct* management of the operation of the library." Based upon our review of the record and the applicable statutory provisions, our conclusion is that this ruling cannot be faulted. Therefore, the Superior Court properly excluded the part-time employees from the library's proposed collective-bargaining unit under § 28–9.4–2(b)(7).

### III

### Conclusion

We agree with the trial justice that there is no reason to hold another union election. Because the results from the 1994 election indicate unanimous support for the union, the exclusion of the part-time employees from the eligible voting pool would not affect the results of that election. Therefore, the library shall continue to bargain in good faith with the union in its capacity as the representative for the library's four full-time employees, the secretary, and the custodian.

For all of the above reasons the petitions for certiorari are denied and the writs heretofore issued are quashed. The judgment of the Superior Court is affirmed, and the papers of the case shall be returned to the Superior Court with our decision endorsed thereon.