DECISION
This case is before the Court on appeal from a decision of the Rhode Island Labor Relations Board permitting the accretion of a non-classified Waste Water Treatment Facilities Lab Technician II ("WWTFLT") position into the Rhode Island Council 94, AFSCME, AFL-CIO ("Council 94") bargaining unit. Jurisdiction is pursuant to G.L. § 42-35-15.
Facts/Travel
Plaintiff, Narragansett Bay Water Quality Management District Commission ("NBC") is a public corporation of the State of Rhode Island. The NBC owns and manages two waste water treatment plants, Field's Point and Bucklin Point. The defendant, Rhode Island State Labor Relations Board ("Board") is a state agency with authority to administer the Rhode Island State Labor Relations Act ("RISLRA"). See G.L. § 28-7-1 et seq. The defendant, Council 94, is the exclusive collective bargaining unit representative which consists of NBC's classified non-supervisory employees.
In 1992, the Blackstone Valley Sewer District Commission ("BVSDC") merged into NBC and as a consequence of this merger, BVSDC's waste water treatment plant, Bucklin Point, became a part of NBC with all employees of the former BVSDC now considered employees of NBC. Before the merger, Local 1033, affiliate of Laborers' International Union of North America ("Local 1033"), was certified as the exclusive bargaining representative for classified employees of NBC. Also, before the merger, Council 94 was certified as the exclusive bargaining representative for a group of BVSDC employees. Council 94's certification excluded supervisors from the unit.
In November of 1993, NBC considered a reorganization of the Bucklin Point Laboratory which ultimately occurred in January of 1994. As organized, all of the process work and laboratory technicians would be together at Bucklin Point where they would perform routine work. The more specialized chemistry, however, was to be done at the Field's Point laboratory. The reorganization plan required a responsible party to ensure all of the Bucklin Point samples and analyses were completed correctly; that being, in this case, a person in the position of WWTFLT II. During his June 8, 1995 testimony, Paul Nordstrom, Assistant Director for Operations and Chief Engineer for NBC, discussed the WWTFLT II position. According to Mr. Nordstrom, the non-classified, non-bargaining unit position of WWTFLT II previously existed at the Field's Point laboratory which supervised and reviewed the work done by the lab techs and the lab aide to insure that the quality control was in effect.
In November of 1993, NBC decided to freeze Council 94 positions and create non-classified, non-union positions, because it had been contractually difficult getting Field's Point laboratory technicians to Bucklin Point during shortages. NBC ultimately froze the classified position of Paul Conte ("Conte"), a laboratory technician at Bucklin Point, and created a non-classified lab technician position. In December of 1993, Conte was awarded the non-classified position of WWTFLT II at the Bucklin Point laboratory and signed an individual employment agreement with NBC in January of 1994.
Conte testified that his duties as WWTFLT II included implementing new testing procedures and supervisory functions such as training, assigning work, overseeing and reviewing work, applying and enforcing personnel rules, monitoring compliance with safety rules, insuring performance standards with respect to testing procedures, and implementing corrective measures. Conte continued to work in the same area, during the same hours, on the same days with the same people.
On or about November 15, 1993, Council 94 filed a petition with the board whereby it sought to accrete the WWTFLT II position into its existing classified bargaining unit which was located at Bucklin Point. The board conducted an informal hearing and on or about August 17, 1994, it denied Council 94's petition. Thereafter, on or about August 23, 1994, Council 94 requested a formal hearing on this matter. Pursuant to this request, formal hearings were held on February 9, 1995, June 8, 1995, October 3, 1995, and June 20, 1996. On or about July 14, 1997, the board issued its decision and order permitting the accretion of the WWTFLT II position and ordering NBC to recognize Council 94 as the bargaining agent for said position.
Before the Court is plaintiff's request for relief pursuant to G.L. § 42-35-15 and G.L. § 9-30-1 et seq. claiming that the board's decision, which permitted the accretion of the WWTFLT II position into the Council 94 bargaining unit, is clearly erroneous, as the WWTFLT II is supervisory. Further, plaintiff contends the WWTFLT II position fails to meet the community of interest criteria necessary to justify accretion into the Council 94 bargaining unit. Finally, plaintiff argues that the board's decision lacks consistency with the practice, policy, and custom of excluding non-classified positions from a bargaining unit which is composed of classified employees.
Standard of Review
The review of a decision of the commission by this Court is controlled by R.I.G.L § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,
No. 96-112-M.P., Slip Op. at 7 (R.I., filed June 9, 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. RhodeIsland Public Telecommunications Authority, et al. v. RhodeIsland Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
I. Supervisor
In defining the term supervisor, the Rhode Island Supreme Court has looked to federal law for direction. Accordingly, a supervisor is defined as
 "`any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."' (Emphasis added.) Bd. of Trustees v. RI State Labor Rel. Bd., 694 A.2d 1185, 1189 (R.I. 1997) (quoting 29 U.S.C. § 152(11)).
See also Fraternal Order of Police, Westerly Lodge No. 10 v. Townof Westerly, 659 A.2d 1104, 1108; State v. Local No. 2883, AFSCME, 463 A.2d 186, 190, n.4 (R.I. 1983). "Managers and supervisors are those who carry out and often help formulate the employer's policies." Local No. 2883, 463 A.2d at 191. As such, the "inclusion of managerial and supervisory employees in a collective-bargaining unit would create a conflict of interest that would upset the delicate balance of power between management and labor." Bd. of Trustees, 694 A.2d 1189 (citing Local 2883 463 A.2d at 190) (discussing NLRB v. Bell Aerospace Co., Division ofTextron, Inc., 416 U.S. 267, 94 S.Ct 1757, 40 L.Ed.2d 134 (1974) and NLRB v. Yeshiva University, 444 U.S. 672, 100 S.Ct 856, 63 L.Ed.2d 115 (1980)). "Managerial and supervisory employees may not engage in collective bargaining." Bd. of Trustees, 694 A.2d at 1190 (citation omitted.)
The Rhode Island Supreme Court has given examples of employees vested with "managerial" or "supervisory" authority. InLocal No. 2883, the court found that a school superintendent was clearly a "supervisory and/or managerial employee." Id. at 191. In arriving at this conclusion, the court noted the superintendent's panoply of duties:
 "Doctor Smith's job description required him explicitly to perform supervisory and managerial duties. In general he was required to `plan, organize, coordinate and direct the work' of all staff at the Ladd School. Among other things, he was required to `be responsible for the work of the staff,' to `consult with superiors relative to the policies and objectives of the institution,' and to `make rules and regulations governing the work of all services of the institution."' Id. at 191, fn. 7.
The court concluded the superintendent could not be a member of a bargaining unit. In Westerly Lodge #10, our Supreme Court found that members of the Westerly Police Department, specifically police captains and lieutenants, were "supervisory or managerial personnel." Id. at 1108. Here, the court noted the captains' and lieutenants' responsibilities.
 "The responsibility of lieutenants and captains to assume the role of chief under certain conditions in the Westerly police department makes these officers supervisory or managerial personnel. Their responsibilities to discipline, command, and adjust grievances of lower ranking officers further support this conclusion, in addition to their duties to effectuate departmental policy and make recommendations for certain actions regarding personnel." Id.
The court concluded that these members of the Westerly Police Department should be excluded from the collective bargaining unit.
Most recently, in Bd. of Trustees, the Rhode Island Supreme Court gave an example of employees who were not supervisors within the meaning of 29 U.S.C. § 152 (11). In arriving at this decision, the court declined to "reiterate each of the board's findings," "not[ing] only that none of the library's four full-time employees had the authority to hire or to firesubordinates, to discipline them, or to adjust employeegrievances." Id. at 1190 (emphasis added.) Classifying the supervisory authority held by the four employees as "`merely routine or clerical [in] nature,"' the court concluded that the employees could partake in the library's proposed collective bargaining unit. Id.
In the instant matter, the board noted Mr. Conte's responsibilities as a WWTFLT II which included: "implementing new testing procedures and supervisory functions such as training, assigning work, overseeing and reviewing work, applying and enforcing personnel rules, monitoring compliance with safety rules, insuring performance standards with respect to testing procedures and implementing corrective measures." The record evidences that in both his present and prior positions, Mr. Conte has worked with laboratory aides and has corrected lab aides who were making mistakes. Also, Mr. Conte testified that on weekends, when neither he nor another supervisor is present, the lab continues to function.
Furthermore, absent from Mr. Conte's responsibilities were the recognized indicia of a person's acting in an administrative capacity. These indicia significantly include the power to hire, to fire, to discipline, and to adjust grievances. See Bd. ofTrustees, 694 A.2d at 1190. A review of the record demonstrates that Mr. Conte has no authority to fire or to discipline. First, although Paul Nordstrom, NBC's Assistant Director for Operations and Chief Engineer, testified that Mr. Conte can "recommend termination," Mr. Conte testified that he was not sure who had the final say in firing employees and his testimony further revealed that he did not even have the authority to discipline an employee. The Court is constrained to note that even Nordstrom, the Assistant Director for Operations, could only recommend termination to the appointing authority. The record demonstrates and the Court finds that Mr. Conte, in his WWTFLT II position, lacked the authority to hire or fire or adjust grievances, and like the four employees in Bd. of Trustees, possessed duties that were "routine" or "clerical."
II. Accretion
Accretion is the process by which "groups of new employees, or present employees in new positions, can be added to an existing [collective bargaining] unit without a vote on their representation." RI Pub. Tel. Auth. v. RI Labor Rel. Bd.,650 A.2d 479, 486 (R.I. 1994). Accretion is warranted when "such a community of interest exists among the entire group so that the additional employees have no separate unit identity and therefore should properly be governed by the larger group's choice of bargaining representatives." Id. at 486-87. In determining whether there is a community of interest, the court in R.I. Pub.Tel. Auth. noted factors relied on by the NRLB. These factors are as follows:
 "1. Similarity in scale and manner of determining earnings,
 2. Similarity of employment benefits, hours of work, and other terms and conditions of employment,
 3. Similarity in the kind of work performed,
 4. Similarity in the qualifications, skills, and training of the employees,
 5. Frequency of contact or interchange among employees,
 6. Geographic proximity,
 7. Continuity or integration of production processes,
 8. Common supervision and determinations of labor relations policy,
 9. Relationship to the administrative organization of the employer,
 10. History of collective bargaining,
 11. Desires of the affected employees; and,
 12. Extent of the union organization."
In R.I. Pub. Tel. Auth., the Rhode Island Supreme Court held that interns/associate producers employed by a public television station did not share mutual interests in wages, hours, and other conditions of employment which, coupled with recognized accretion factors did not warrant their inclusion into an existing collective bargaining unit. These factors, which are used by the NLRB, are: the integration of operations; centralization of managerial and administrative control; geographic proximity; similarity of working conditions, skills, and functions; common control over labor relations; collective bargaining history; and interchangability of employees.
In the instant matter, the board found that Mr. Conte shared a "strong community of interest" with the other classified positions at Bucklin Point so as to warrant accretion into the existing bargaining unit. Noting the factors considered in accretion cases, See supra R.I. Pub. Tel. Auth., the board noted on the similarities between Conte's position and those of the other classified employees at Bucklin Point. These similarities included:
 "1. The employees worked closely together in the same laboratory;
 2. They had similar skills;
 3. They worked under the same working conditions;
 4. They interchanged among each other and performed the others jobs when the person was absent;
 5. They all reported to the same bosses;
 6. They could not effectively recommend discipline against one another;
 7. They continued to receive similar wages and benefits;
 8. The continued to work similar hours; and
 9. The units Collective Bargaining history demonstrates that this position should be accreted to the existing Collective Bargaining Unit." (Decision at 6.)
The record evidences that Mr. Conte worked in the same laboratory with other classified employees and that he and other classified employees worked a 35 hour work week and received the same type of health, sick, and vacation benefits. Also, the record shows the interchangability of employees at the Bucklin Point laboratory. During his testimony, Mr. Conte agreed that presently, and prior to 1994, the employees at Bucklin Point assisted each other and worked as a team. Furthermore, prior to 1994, Mr. Conte was a classified employee who was a member of the Council 94 bargaining unit until his position was frozen and he joined the ranks of non-classified service. According to the testimony of Francis Underwood, in January of 1994, Mr. Conte was the only non-classified employee at the Bucklin Point Lab.
Mr. Conte shared a "strong community of interest" with the other classified positions at Bucklin Point. This Court finds no express prohibition, either by statute or Rhode Island case law, against the accretion of non-classified positions into a bargaining unit of classified employees. This is in contrast to situations where our Supreme Court has excluded groups of employees from bargaining units. See supra Bd. of Trustees
(holding managerial and supervisory employees may not engage in collective bargaining); Barrington School Com. v. Labor Rel. Bd.,608 A.2d 1126, 1136 (R.I. 1992) (confidential employees excluded from collective bargaining).
After review of the entire record this Court finds that the board's decision, permitting the accretion of Mr. Conte's position into the existing bargaining unit is supported by substantial, reliable, and probative evidence of record and is not affected by an error of law. With respect to plaintiffs prayer for declaratory relief, this Court declines to grant said petition. See generally Owner-Operators Indep. Drivers v. State.541 A.2d 69 (R.I. 1983).
Counsel shall submit an appropriate order for entry.