DECISION
Before the Court is an appeal by the Tiverton Library Board of Trustees (Library) from a decision of the Rhode Island Labor Relations Board (Board), finding that Elaine Miller (Miller), the Assistant Director of the Tiverton Library, is not a supervisory, managerial or confidential employee and, therefore, should be included in the proposed bargaining unit of the International Brotherhood of Teamsters, Local Union 251 (Union). Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
The Union, on behalf of the employees of the Tiverton Library, filed a "Petition by Employees for Investigation and Certification of Representatives" (Petition) pursuant to G.L. 1956 § 28-7-16. The Petition sought a bargaining unit comprised of the following: four part-time Library Associates, the Assistant Director, the Coordinator of Children's Services, and the Coordinator of Technical Services. The Library disputed the inclusion of four positions in the bargaining unit. The Library later conceded that the Coordinators of Children's Services and Technical Services were properly included. The remaining issues before the Board were whether the Assistant Director's position was supervisory, thus requiring its exclusion from the bargaining unit, and whether the four part-time positions could be excluded because those employees each work under 20 hours per week.[1]
At the hearing, Patricia Collins (Collins), the Chairperson of the Board of Trustees, testified that both the Director and Assistant Director positions are supervisory. According to Collins' testimony, the Director and Assistant Director are scheduled so that one of them is always on duty when the Library is open. The Assistant Director is also in charge of the volunteer program. She noted that the Board of Trustees has vested the position of Assistant Director with substantial authority, including authority to transfer, suspend, or discipline employees, to address and adjust employee complaints, and to operate the library whenever the Director is out sick or on vacation.
Collins stated that in carrying out those duties, the Assistant Director is expected to use independent judgment. She testified that the Assistant Director is authorized to perform all of these functions independent of the Library's Board of Trustees. Collins explained, however, that neither the Director nor the Assistant Director has the authority to hire or fire employees. While the final decision of whether to hire or fire rests with the Board of Trustees, Collins noted that they usually follow the Director's recommendation. Furthermore, Collins testified that the Assistant Director is the second highest paid person in the Library. When asked if there is anything the Assistant Director would not be responsible for in the Director's absence, Collins replied, "I can't think of a thing. She is to be acting director when the Director is not there; that is why we have an [A]ssistant [D]irector." Tr. 1 at 24.
Janet Kosinski (Kosinski), the Coordinator of Children's Services, also testified as to Miller's responsibilities as Assistant Director. Kosinski stated that Miller's responsibilities include coordinating all of the Library's volunteer services and doing all of the computer work. However, Kosinski testified that Miller does not have authority to schedule hours or to transfer employees. Kosinski stated that whenever the Director is absent from the Library, she would recognize Miller as being in charge. She further noted that the schedule is made so that either the Director or the Assistant Director would be on duty at all times.
In support of their position, the Library submitted a written job description which was entered into evidence without objection. The description begins by listing the "basic function" of the position:
 "This position involves responsibility for the supervision and effective operation of the main library and the branches, including supervision of staff and volunteers under the direction of and in the absence of the Library Director."
Job Description of Assistant Library Director, Exhibit 5, p. 1. The description goes on to list several qualifications and responsibilities required of the employee. These include:
 "Qualifications:
 * * *
 4. Ability to exercise initiative and independent judgment.
 * * * Responsibilities:
 1. serves as acting director in Director's absence.
 * * *
 12. Trains and supervises personnel when appropriate.
 * * *
 17. Interprets library rules and procedures."
Id. Miller testified that this was the most recent version of her job description, and that it was issued at the time unionization plans began. However, she noted that the description bore no resemblance to the work she actually performed at the Library.
Miller testified that she has (1) never evaluated, supervised or trained any of her fellow employees, (2) has never set library policies or schedules, participated in the budget preparation process or annual reports, or (3) has never taken part in determining whether the library should shut down due to foul weather. Tr. 2 at 68, 71, 82, 68; Decision at 3. Miller testified that her normal day-to-day duties in the Library are all "routine jobs," many of which are outlined in a procedures manual and do not require the use of independent judgment. Miller stated that different directors of the library have specifically told her that "[y]ou don't supervise, I'm the boss. This is my library."Tr. 2 at 72. Miller stated that although she is the Assistant Director, "that's what the name says, [and] that's what the title is, but it's only a name. I have no authority." Tr. 2 at 75. Miller did testify that she has filled in as acting Director of the Library for short periods of time "during the interim period[s] when the library [did] not have a director on the payroll." Tr. 2 at 59, For example, Miller stated that on one occasion she did fill in for the Director by attending a board meeting. According to Miller, this was usually for a period lasting between two and five weeks, and during those periods she had all of the duties and responsibilities of the Director.
Miller further testified that during the course of normal operation of the Library, whenever the Director is not physically present inside the Library, the "next senior person" based on seniority is left in charge. According to Miller, the only other full-time employee with more seniority than she is Annette Ferry (Ferry), the Coordinator of Technical Services. Miller stated that in most cases, it is Ferry rather than Miller who is in charge of the Library when the Director is absent.
The Board found that "[o]n direct examination, Ms. Miller made it clear that she has been in this position for some 16 years and in that position she had never hired or fired anyone, nor has she ever disciplined anybody as Assistant Director."Decision of the Board at 2-3. The Board concluded that the position of Assistant Director was not supervisory, managerial or confidential, and, therefore, should be included in the bargaining unit. The Library appeals the decision of the Board on the sole issue of Whether the Assistant Director is a supervisory employee and is ineligible for inclusion in the collective bargaining unit.
 Standard of Review
The review of a decision of the Board by this Court is controlled by G.L 1956 § 42-35-15 (g), which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Board's decision. Newport Shipyard v. R.I. Commissionfor Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of EmploymentSecurity, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I.Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. PublicUtil. Comm'n., 694 A.2d 722, 726 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Supervisory Status
Supervisors have traditionally been excluded from the bargaining process to prevent conflicts of interest that may "upset the delicate balance of power between management and labor." Bd. of Trustees, Robert H. Champlin Memorial Library v.R.I. State Labor Relations Bd., 694 A.2d 1185, 1189 (R.I. 1997). The question of whether an employee should be accorded managerial" status "is a mixed one of fact and law." N.L.R.B. v.Yeshiva University, 444 U.S. 672, 691, 100 S.Ct. 856, 867, 65 L.Ed.2d 115 (1980). Courts have applied this standard of review to employees with "supervisory" status. See Beverly Enterprisesv. N.L.R.B., 661 F.2d 1095, 1099 (6th Cir. 1981), N.L.R.B. v.Lauren Manufacturing Company, 712 F.2d 245, 247 (6th Cir. 1983),Glenmark Associates, Inc. v. N.L.R.B., 147 F.3d 333, 338 (4th Cir. 1998). When determining whether a position is supervisory, our Supreme Court has looked to federal law for direction, and has applied the definition of "supervisor" found in 29 U.S.C. § 152
(11). Bd. of Trustees v. RI State Labor Relations Bd.,694 A.2d 1185, 1189 (R.I. 1997). A supervisor is:
 "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."
Id. (quoting 29 U.S.C. § 152 (11)). Courts have held that29 U.S.C. § 152 (11) "is to be read in the disjunctive [and, therefore] any one of the enumerated powers may signify supervisory status." Telemundo de Puerto Rico, Inc. v. N.L.R.B.,113 F.3d 270, 273 (1st Cir. 1997); see Northeast Utils. Serv.Corp. v. N.L.R.B., 35 F.3d 621, 624 (1st Cir. 1994), cert. denied513 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.3d 214 (1995); MaineYankee Atomic Power Co. v. N.L.R.B., 624 F.2d 347, 360 (1st Cir. 1980). "[T]he actual exercise of any one of those functions is sufficient to constitute the individual supervisor, even if he does not exercise all of the functions which define supervisory status." Wilson Tree Co., 312 N.L.R.B. 883, 892 (1993). However, "as the definition's final clause reflects, Congress intended to exclude `straw bosses,' `lead men' and other low-level employees having modest supervisory authority from supervisor status."Telemundo de Puerto Rico, Inc. v. N.L.R.B., 113 F.3d at 273 (quoting N.L.R.B. v. Res-Care, Inc., 705 F.2d 1461, 1466 (7th Cir. 1983)). Therefore, "even an enumerated power must involve the exercise of independent judgment in order to brand the holder of the power as a supervisor." Telemundo de Puerto Rico, Inc. v.N.L.R.B., 113 F.3d at 274. (Emphasis added).
Moreover, a job description alone is not determinative of the supervisory status issue. Maine Yankee Atomic Power v. N.L.R.B., 624 F.2d at 364. Rather, "[w]hat is determinative is whether, in the exercise of one or more of the indicia of supervisory authority, the individual in question actually exercises independent judgment on behalf of his employer. Wilson Tree Co., 312 N.L.R.B. at 892. (citations omitted).
"Courts must afford great deference to the Board's expert determination of which workers fall into which classification," supervisor or employee. Telemundo de Puerto Rico, Inc. v.N.L.R.B., 113 F.3d at 274. The Board is "an agency presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." Id. (quoting Universal Camera Corp. v.N.L.R.B., 340 U.S. 474, 488; 71 S.Ct. 456, 465; 95 L.Ed. 456 (1951)). As a result, the court "must accept the Board's findings as to which employees are supervisors and which are not . . . [if there is] substantial evidence in the record as a whole" to support those findings. Telemundo de Puerto Rico, Inc. v.N.L.R.B., 113 F.3d at 274; see Universal Camera v. N.L.R.B., 340 U.S. at 488, 71 S.Ct. at 464-65, 95 L.Ed. at 467; ProvidenceHospital v. N.L.R.B., 93 F.3d 1012, 1016 (1st Cir. 1996). This is in accord with our standard of review pursuant to R.I.G.L. §42-35-15 (g). See Newport Shipyard v. R.I. Commission for HumanRights, 484 A.2d at 893.
Miller argues that a determination of whether an employee's position is supervisory is fact-based. However, Miller's reliance on Davenport v. Public Employment Relations Board, where the Iowa Supreme Court found that "[t]he determination is ordinarily a fact question," is misplaced. 264 N.W.2d 307, 314 (Iowa 1978) (citing N.L.R.B. v. Broyhill Co., 514 F.2d 655, 658 (8th Cir. 1975)). The Davenport court found that the procedure used in making this factual determination "involves a case-by-case approach in which the agency gives practical application of the statute to the infinite and complex gradations of authority which may exist in employment." Id. However, that court went on to explain that the agency's exercise of discretion will be accepted by reviewing courts only "if it has . . . [a] reasonable basis inlaw." Davenport v. Public Employment Relations Board, 264 N.W.2d at 314. (Emphasis added).
In its memorandum, the Library "concedes that the present incumbent in the position is not a supervisory person." The issue, according to the Library, is not whether Miller is an effective supervisor, but whether the position of Assistant Director is supervisory. Accordingly, the Library argues that the Board's decision was erroneous because it focused exclusively on Miller's testimony in making its determination, despite also having before it a written job description and the testimony of both Collins and Kosinski. In support of its argument, the Library relies on a First Circuit case which held that "[i]t is the existence of supervisory authority which is critical." MaineYankee Atomic Power Co. v. N.L.R.B., 624 F.2d at 362. In that case, the court found evidence of a "granting of express authority to direct others," and that that evidence "could not be clearer." Id. However, in the instant case, the Board determined that evidence of Miller's authority, as presented through the written job description and the limited testimony presented by the Library, did not outweigh Miller's own testimony to the contrary. "The Board does not have to defer to testimony that employees had the authority listed in the job descriptions when . . . employees testified that they had no such authority and there was no other evidence indicating that they had such authority." N.L.R.B. v. Dickerson-Chapman, Inc., 964 F.2d 493, 498 fn. 6 (5th Cir. 1992).
"The burden of proving that any individual is a supervisor within the meaning of the Act falls upon the party making the contention." Wilson Tree Co., 312 N.L.R.B. at 892. Although the Library, through the testimony of the witnesses, presented some evidence that employees recognized Miller's authority in the Library whenever the Director was absent, the only other probative evidence presented to the Board by the Library was Miller's written job description. While that job description does set out various supervisory duties which are to be the responsibility of the Assistant Director, the Library presented little evidence to the Board that Miller actually exercised, or was able to exercise, any of those duties. The Maine Yankee court stated that "job descriptions standing alone and unsupported by other evidence would. indicate little." Maine Yankee Atomic PowerCo. v. N.L.R.B., 624 F.2d at 364. (Emphasis added).
While the Court does not state that the Board cannot look to a job description in making its determination, or that a job description can never be determinative, it articulates that the job description by itself is insufficient. In its written decision, the Board noted that:
 "while the Town did submit an exhibit which purported to be Ms. Miller's job description, that document actually had little, if any relationship to the work actually performed. While the Job description itself describes a position that may exercise sufficient indicia of authority to make the position supervisory, it is abundantly clear from the reliable credible evidence in the record that the position, as described, is not the position actually occupied by Ms. Miller, despite the fact that she holds the title of Assistant Director." (Emphasis in original).
As a result, the Board found that "[t]here was absolutely no evidence presented . . . to support the Town's allegation that Ms. Miller actually excercised any of the indicia of supervisory authority."
This Court finds that there was sufficient evidence in the record for the Board to find that Miller did not have the recognized indicia of authority to show that she acted in a supervisory capacity. These include the power to hire, to fire, to promote and to discipline other employees. See Bd. of Trusteesv. R.I. State Labor Relations Bd., 694 A.2d at 1190. The record indicates that Miller clearly has no power to hire or fire employees. Collins testified that even the Director lacks that authority. In addition, Kosinski testified that Miller did not have the authority to schedule hours or to transfer employees. The record further evidences that the testimony given by Collins and Kosinski as to Miller's duties in the Library is inconsistent. While Collins, in her testimony, repeatedly refers to the responsibilities of the "Assistant Director," Kosinski's testimony refers to the duties granted to "Miller." Collins' more general use of the term "Assistant Director" implies that her testimony referred to the duties expected of the position of Assistant Director. Alternatively, by referring to Miller by name, Kosinski's testimony points to Miller's actual
responsibilities in the Library.
Additionally, the exact date upon which Miller's job description was formulated is not pertinent. The First Circuit addressed the issue of whether a change in job description in view of imminent unionization affects the supervisory status of an employee:
 "Even if the [employer] were partly motivated to make these changes by a desire to fortify the [supervisor's] supervisory status, it was entitled to make them so long as they were not bogus but were made in good faith. It is the [employer], not the Board, that defines the jobs in its own hierarchy."
Maine Yankee Atomic Power Co. vs. N.L.R.B., 624 F.2d at 364-65. However, when the description was entered into evidence at the hearing, the Board noted that the attorney for the Library did not know when the job description was formulated:
 "Let the record show that the attorney for the library does not know when the job description was developed, so therefore it could have been developed before the petition or since."
Proceedings at the Hearing In re Tiverton Library Board ofTrustees and Teamsters Local Union Number 251, Volume 2, at 95. Said description was entered into evidence without objection. In addition, when questioned about the description, Miller refers to it as "the one that we got when we started pursuing our union activities." Id., Volume 1 at 61. She eventually confirmed that it was, in fact, her most recent job description, further evidencing that it was developed prior to the filing of the petition. Id. at 62.
 Conclusion
After a thorough review of the record, this Court finds that the Board's decision is supported by substantial, reliable and probative evidence of record and is not affected by other error of law. The Library's substantial rights have not been prejudiced. The record evidences that the Board had substantial evidence before it to determine that Miller, in her position of Assistant Director of the Tiverton Library, is not a supervisor. Accordingly, the decision of the Board is affirmed.
[1] This second issue is not before this Court.