FRATERNAL ORDER OF POLICE,
WESTERLY LODGE NO. 10

v.

TOWN OF WESTERLY.

TOWN OF WESTERLY

v.

FRATERNAL ORDER OF POLICE,
WESTERLY LODGE NO. 10.

Nos. 94–358–M.P., 93–488–M.P.

Supreme Court of Rhode Island.

June 22, 1995

Richard A. Skolnik, Skolnik, McIntyre, Tate Esquires Ltd., Providence, for plaintiff.

Kelly M. Fracassa and Joseph Turo, Nardone, Turo & Naccarto, Westerly, for defendant.

## OPINION

SHEA, Justice.

This matter came before the Supreme Court following our grant of cross-petitions

for the issuance of writs of certiorari pursuant to G.L.1956 (1986 Reenactment) § 28–9.2–15, as amended by P.L.1988, ch. 207, § 2. The petitioners are the Fraternal Order of Police (FOP), Westerly Lodge No. 10 (union), and the Town of Westerly (town). The petitions seek partial review of an August 26, 1993 decision of an interest-arbitration panel (panel) in the matter of *In re Town of Westerly and Fraternal Order of Police, Westerly Lodge No. 10*, No. 93–03–AO. These matters have been consolidated for disposition. For the reasons set forth below, we affirm the arbitration panel's award.

The town and the union had appeared before the panel pursuant to chapter 9.2 of title 28 in order to settle all unresolved issues pertaining to a collective-bargaining agreement for the period July 1, 1993, to June 30, 1994. Ten evidentiary hearings and four executive-session meetings were held throughout the bargaining process. By the end of negotiations the parties had presented a total of 112 exhibits and eight witnesses in support of their respective proposals and/or contentions regarding unresolved issues. The interest-arbitration panel thereafter issued its decision.

The union seeks review of two portions of the decision rendered by the panel. First, the union seeks review of the panel's rejection of the union's position that the lieutenant, the captain, and the chief of the Westerly police department were members of the collective-bargaining unit and were properly subject to the arbitration process. Second, it seeks review of the panel's determination that no health-care benefits, upon retirement, will be afforded to any person hired during the new contract. The union contends that the panel's decision with respect to these two issues constitutes errors of law requiring reversal.

■ The town seeks review of the arbitration panel's decision to extend the annual escalator in the current pension plan for all current fulltime police officers to those officers who had previously retired. Specifically the town contends that the arbitration panel had no authority to extend the pension escalator to retired police officers because, it reasons, these police officers were not members of the bargaining unit during the arbitration and extending the escalator to retired officers altered prior contractual arrangements between them and the town.

The panel's award, issued on August 26, 1993, granted a pension escalator of 2.5 percent retroactive to July 1, 1993. Although the town admits and recognizes that the agreement expired June 30, 1993 and that the union demanded arbitration in order to have an agreement that would become effective July 1, 1993, the town is mistaken in its contention that the panel's decision constituted a unilateral modification of prior pension plans. The arbitration panel's decision does not modify a prior agreement; rather, it determined the terms of benefits after the expiration of the then-current agreement, which ended prior to the effective date of the arbitration panel's decision.

In Rhode Island both the General Laws and decisional law explicitly authorize the modification of pension benefits. For instance, G.L.1956 (1991 Reenactment) § 45–21–52 provides several options for awarding cost-of-living increases for municipal employees. In *City of East Providence v. Local 850, International Association of Firefighters*, 117 R.I. 329, 335, 366 A.2d 1151, 1154 (1976), this court said:

> "There is likewise no doubt that the provisions of an employee pension plan come within the meaning of 'terms and conditions of employment.' Virtually identical language in the National Labor Relations Act has been held to include pension plans. * * * In the past we have recognized the persuasive force of federal cases in this field in view of the parallels between our system of labor regulations and the federal system. * * * Accordingly, we hold that the Arbitration Act grants the board the power to render a decision amending the policemen's and firemen's pension plans."

Furthermore, in *Local 472, International Brotherhood of Police Officers v. Town of East Greenwich*, 635 A.2d 269 (R.I.1993), this court explicitly recognized that an arbitration panel may adopt a cost-of-living increase for retired police officers when consistent with

the state statute. For these reasons the decision of the arbitration panel awarding a pension escalator is upheld.

The union argues that the arbitration panel illegally excluded lieutenants, captains, and the chief of the Westerly police department from the bargaining unit. The argument lacks merit for the simple reason that the parties themselves waived lieutenants, captains, and the chief out of the bargaining unit. It thus stands to reason that these positions were properly excluded from the bargaining unit because the Master Agreement in effect at the time of the arbitration specifically excluded them.

The union bases its argument largely on the State Labor Relations Board's (the board) certification in case No. EE3108 that the FOP represents "all full-time policemen of the Westerly Police Department." Per § 28–9.2–3, the term "policemen" includes all full-time police up to and including the rank of chief. Accordingly, argues the union, lieutenants, captains and the chief must be included within the collective-bargaining unit.

The interest arbitrators for the parties can do anything that the parties could have agreed to do. In the absence of a contract, the board's certification in case No. EE3108 would in all probability be binding. But in the instant case we have a contract that the parties could not resolve fully, at which point they resorted to interest arbitrators.

In the *Town of Lincoln v. Lincoln Lodge,* No. 94–121–A., —— A.2d —— (R.I.1995), we have held that the General Assembly has the power to confer the right to be included in local police bargaining units upon all officers up to and including the rank of chief. Although there is no constitutional inhibition upon the Legislature's power to create such a situation, we have never endorsed the wisdom of that legislative determination. *Gallucci v. Brindamour,* 477 A.2d 617 (R.I.1984). In the case at bar the parties have the right to contract to limit participation in the bargaining unit so as to exclude managerial employees. Since the parties were unable to reach agreement on all issues, the interest arbitrators, within the scope of the submission, could reach a determination upon any issue upon which the parties could have agreed.

The facts of this case overrule the logic of the union's argument. These facts, along with certain provisions within the new Master Agreement, which was in force from July 1, 1993, to June 30, 1994 (the new contract), demonstrate that all parties effectively waived the inclusion of lieutenants, captains, and the chief within the bargaining unit. Parties to police collective-bargaining negotiations may, by their conduct, waive membership of top-ranking police officers in the bargaining unit. In *Gallucci,* the International Brotherhood of Police Officers was certified as the bargaining representative of all members of the West Warwick police department, but each collective-bargaining agreement reached after certification specifically excepted the chief from its terms and conditions. *Id.* at 619. As a result, this court said that "[t]here is no question that the plaintiff, the brotherhood and the town, both explicitly and implicitly, over a significant period of time have chosen to waive the inclusion of the chief of police in their collective-bargaining contract." *Id.*

Here, the Master Agreement, the one in force during all pertinent contract negotiations, specifically excepted lieutenants and captains, in addition to the chief. In addition, no facts exist in the record indicating that the lieutenants, the captains, or the chief of the Westerly police department sought representation by the union in the collective bargaining process. The town contends that the managerial and supervisory duties of lieutenants, captains, and the chief require exclusion from the bargaining unit. We are inclined to agree.

Lieutenants, captains, and especially the chief of most police departments have managerial and supervisory duties over lower ranking police officers. These managerial and supervisory duties require their exclusion from the bargaining unit. In *State v. Local No. 2883, AFSCME,* 463 A.2d 186 (R.I. 1983), this court said that "inclusion of managerial employees in bargaining units would create a conflict of interest. These employees help formulate and effectuate the em-

ployer's policies. To allow them to be union members would be to 'obliterate the line between management and labor.'" *Id.* at 190 (citing and quoting in part *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 278, 94 S.Ct. 1757, 1764, 40 L.Ed.2d 134, 145 (1974)). We further said in *Local No. 2883* that "allowing unionization of supervisors would deprive employers of the loyal representatives to which they were entitled and that it was important for the efficacy of the collective-bargaining process to maintain a balance of power." 463 A.2d at 190.

We also noted in *Local No. 2883* that the board issued a policy statement in November of 1973 stating that managerial and supervisory personnel should be excluded from state-employee bargaining units to effectuate the intent of the State Labor Relations Act. *Id.* In its policy statement, the board noted that allowing state managerial and top-level supervisory personnel to organize and bargain collectively would "'disrupt the functions of state government and would put the state of Rhode Island on an unequal footing as far as equality of bargaining power is concerned.'" *Id.* at 191. As a result we went on to hold that "[t]o allow managers and supervisors to participate in the collective-bargaining process would be to create a conflict of interest. Managers and supervisors are those who carry out and often help formulate the employer's policies." *Id.* Several years later, in *Barrington School Committee v. Rhode Island State Labor Relations Board,* 608 A.2d 1126, 1135 (R.I.1992), this court reiterated its past holding in *Local No. 2883* that "'managerial' and 'supervisory' employees may not engage in collective bargaining." Once again we reaffirm this holding.

The conflict of interest created by including managerial and supervisory employees within the bargaining unit clearly applies to the chief of police. In *Gallucci* we said, "it is highly debatable that including the chief of police in a bargaining unit is designed to achieve the public good. It may indeed result, in particular instances, in a severe conflict of interest between the chief of police, whose job it is to manage the department, and the members of the

union who are authorized to bargain on his behalf." 477 A.2d at 619.

We further stated that "some communities and some unions will find the function of management to be virtually incompatible with membership in the bargaining agency * * * ." *Id.*

The Rhode Island Ethics Commission (the commission) rendered an advisory opinion in 1990 advising that "the Code of Ethics does not permit a Chief of Police to simultaneously serve as a member of the bargaining unit covering uniformed officers." *Commission Advisory No. 9,* at 1 (R.I. Ethics Commission, May 10, 1990)(advisory No. 9). In its analysis, the commission noted that the Policemen's Arbitration Act, chapter 9.2 of title 28, which was enacted prior to the Code of Ethics, permits the chief to be a member of the bargaining unit. Advisory No. 9 at 3. However, after the enactment of the Code of Ethics, the "specific prohibitions contained in the Code of Ethics and Commission regulations now make it impossible for a Chief of Police to participate in grievance hearings and/or to recuse himself or herself from participation at every such hearing." *Id.* at 4. The commission further stated that the Code of Ethics "would also prohibit a Chief of Police from either recommending or instituting raises or promotions for other members of the bargaining unit." *Id.* As a result the commission concluded that

"to allow a Chief of Police to simultaneously serve in a supervisory capacity, responsible for discipline and other matters which may allow for the filing of a grievance pursuant to a collective bargaining agreement, while the Chief himself or herself is a member of said unit, and thus joined together with other union members to achieve a common financial objective, results in a situation which creates an appearance of impropriety as prohibited under the Code of Ethics, and, dependent upon particular circumstances, possible additional violations of the Rhode Island Code of Ethics." *Id.*

Thus, the conflict of interest created by including the chief within the bargaining unit in Westerly legally prevents this inclusion.

In labor matters such as this, the Rhode Island Supreme Court has used federal labor practice for guidance. *Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board,* 650 A.2d 479, 485 (R.I.1994). Under the provisions of 29 U.S.C.A. § 152(11)(West 1973), the term "supervisor" is defined as

"any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

■ The United States Supreme Court defined "managerial employees" as "those who 'formulate and effectuate management policies by expressing and making operative the decisions of their employers.'" *NLRB v. Yeshiva University,* 444 U.S. 672, 682, 100 S.Ct. 856, 862, 63 L.Ed.2d 115, 125 (1980) (quoting *Bell Aerospace Co.,* 416 U.S. at 288, 94 S.Ct. at 1768, 40 L.Ed.2d at 150). Such employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management. "[N]ormally an employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Yeshiva,* 444 U.S. at 683, 100 S.Ct. at 862, 63 L.Ed.2d at 126.

The duties and responsibilities of the Westerly police lieutenants and captains cause them to fit the definitions of supervisory or managerial personnel and thus were rightly excluded from the collective-bargaining process. Captains must handle serious infractions of departmental policies and are responsible for the supervision and control of all officers and for their efficiency and effectiveness as members of the department. Captains assume the powers, duties, and responsibilities of the chief in his or her absence.

Lieutenants in the Westerly police department are responsible for the immediate supervision and control of all members under their command. They must also maintain discipline and morale within the department and investigate personnel complaints as assigned by the chief. Lieutenants observe probationary officers and submit to the chief their opinions regarding the desirability of retaining them as permanent members of the force. They may also assume the duties, powers, and responsibilities of the chief in either the chief's or the captain's absence.

The responsibility of lieutenants and captains to assume the role of chief under certain conditions in the Westerly police department makes these officers supervisory or managerial personnel. Their responsibilities to discipline, command, and adjust grievances of lower ranking officers further support this conclusion, in addition to their duties to effectuate departmental policy and make recommendations for certain actions regarding personnel. As a result, lieutenants and captains in the Westerly police department constitute supervisory or managerial personnel to be excluded from the collective-bargaining unit.

■ The union also argues that the interest-arbitration panel erred by disallowing health benefits upon retirement to those who join the police force during the term of the new contract. The union specifically argues that since these individuals "could not have been members of the bargaining unit at the time of the arbitration, the panel had no jurisdiction to render a decision effecting [the] right of individuals not covered by the collective bargaining unit." For the reasons noted below, we disagree with the union's contentions and affirm the decision of the arbitration panel denying health benefits to police personnel hired under the new contract.

■ It is clear that police hired during the term of the new contract will most certainly be covered by its provisions. Certainly, the new contract will affect their rights regardless of whether its provisions are favorable or unfavorable. The specific question to be addressed by this court is whether the interest-arbitration panel may affect

their rights in a particular manner. The question is not whether the panel may or may not affect their rights at all. When fashioning awards, arbitrators have extremely broad discretion. *School Committee of North Providence v. North Providence Federation of Teachers, Local No. 920,* 476 A.2d 1037, 1039 (R.I.1984). A party attempting to overturn a portion of a panel's decision must prove its contention that an arbitrator exceeded his or her authority, and courts make every reasonable presumption in favor of the award. *Coventry Teachers' Alliance v. Coventry School Committee,* 417 A.2d 886, 888 (R.I.1980). Awards will be upheld "[a]bsent a manifest disregard of a contractual provision or a completely irrational result." *City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police,* 545 A.2d 499, 503 (R.I.1988).

We are of the opinion that the interest-arbitration panel rendered an entirely rational decision on this issue. Faced with increasing demands and finite resources to meet these demands, the panel traded off benefits to future police officers to preserve those of current union members. As the panel stated, "[T]he purpose of this award is to allow the Town to better control health care costs. It also seeks to provide fairness in that any new hire will be aware of the benefits extended, which will not include health care upon retirement." It is unsettling but incontrovertible that any allocation of limited resources will cause some to accrue benefits at the expense of others. Here, the allocation sought to protect and fulfill the expectations of those police officers who have been promised and have worked for certain benefits while clearly stating to newcomers, to whom no promises have been made, that their potential employer cannot provide health benefits upon retirement. Clearly, future hirees of the Westerly police department, as newcomers, can either accept the situation and provide for their own health security or choose another employer. The rationality of the panel's decision necessitates its affirmance.

For the foregoing reasons the petitions for certiorari are denied, the writs heretofore issued are quashed and the awards of the interest-arbitration panel appealed from are affirmed. The papers of the case are remanded with our decision endorsed thereon.

BOURCIER, J., did not participate.