DECISION
Before this Court is an appeal by the Town of North Kingston (Town) from a "Decision and Direction of Election" (Decision) of the Rhode Island State Labor Relations Board (Board). Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
On July 2, 1993, the National Education Association of Rhode Island (Union) filed a "Petition by Employees for Investigation and Certification of Representatives" (Petition) with the Board, seeking to represent the following employees of the Town: Public Works Director, Town Engineer, Finance Director, Planning and Development Director, Town Clerk, Tax Assessor, Director of Water Supply, Recreation Director, Building Official, Senior Services Director, Controller, Deputy Town Clerk, Director of Welfare, Superintendent of Golf Course Operations, Highway Superintendent, Engineering Inspector, Recreation Program Director, Golf Course Operations Manager, Principal Planner, Principal Planner/Environmental Coordinator, Executive Secretary, Community Development Director, and the Library Assistant Directors.
After several hearings, which spanned the course of over two years, the Board issued its Decision on August 19, 1997. In the Decision, the Board directed an election among the following positions: Town Engineer, Engineering Inspector, Director of Planning and Development, Principal Planner, Principal Planner/Environmental Coordinator, Director of Welfare, Building Official, Director of Senior Services, Assistant Library Director, Operations Manager, Golf Course Superintendent, Deputy Town Clerk, and Director of Community Development. The Board excluded the Executive Secretary, Director of Public Works, Highway Superintendent, Finance Director, Controller, Tax Assessor, Recreation Director, Town Clerk, and the Director of Water Supply from the election.
On November 6, 1997, the election was held. By a six to five vote, the Union was chosen to represent the employees. On November 12, 1997, the Board certified the Union for those employees.
On December 11, 1997, the Town appealed the decision of the Board, praying this Court reverse the Board's decision, vacate the direction of election, and vacate the certification of representatives.
 Standard of Review
The review of a decision of the Board by this Court is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an agency, a justice of the Superior Court may not substitute his or her judgment for that of the agency board on issues of fact or as to the credibility of testifying witnesses, Mercantum Farm Corp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990) (citing Leviton Mfg. Co. v. Lillibridge, 120 R.I. 283, 291, 387 A.2d 1034, 1038 (1978)); Center for Behavioral Health, Rhode Island, Inc.v. Barros,710 A.2d 680, 684 (R.I. 1998), where substantial evidence exists on the record to support the board's findings. Baker v. Department of Employment and Training Board of Review, 637 A.2d 360, 366 (R.I. 1994) (citing DePetrillo v. Department of Employment Security, 623 A.2d 31, 34 (R.I. 1993); Whitelaw v. Board of Review, Department of Employment Security,95 R.I. 154, 156, 185 A.2d 104, 105 (1962)). Findings of fact by an agency board "are, in the absence of fraud, conclusive upon this court if in the record there is any competent legal evidence from which those findings could properly be made." Mercantum Farm, 572 A.2d at 288 (citing Leviton, 120 R.I. at 287, 387 A.2d at 1036-37). Legally competent evidence is "marked `by the presence of `some' or `any' evidence supporting the agency's findings.'" State v. Rhode Island State Labor Relations Board, 694 A.2d 24, 28 (R.I. 1997) (citing Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)).
 Exceptions to Municipal Employees' Arbitration Act
The Municipal Employees' Arbitration Act, G.L. 1956 § 28-9.4-1 et seq. (Act), grants municipal employees the right to bargain collectively with municipal employers. A municipal employee is defined in the Act as "any employee of a municipal employer, whether or not in the classified service of the municipal employer[.]" § 28-9.4-2(b). Excluded from that definition are "elected officials and administrative officials," and "confidential and supervisory employees." § 28-9.4-2(b)(1)(4).
Furthermore, our Supreme Court has held that so-called managerial employees are excluded from the definition of municipal employees. See Fraternal Order of Police v. Town of Westerly, 659 A.2d 1104 (R.I. 1995). Because these categories of employees are excluded from the protections of the Act, they may not be included in collective bargaining units.
The Town argues that the Board erred in permitting the eleven positions to be included in a bargaining unit, because the positions were either supervisory or managerial, or they were administrative officials, or some combination of the three categories, thus excluded from the Act's protections.
 Supervisors
In Board of Trustees, Robert H. Champlin Memorial Library v. Rhode Island State Labor Relations Board, 694 A.2d 1185, 1189-90 (R.I. 1997), our Supreme Court adopted the federal labor law definition of a supervisor, which is set forth in 29 U.S.C. § 152(11) as:
 "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."
An employee may be a supervisor without meeting all the criteria set forth in 29 U.S.C. § 152(11), and may in fact be considered a supervisor even if only one criterion is met. See Butler-Johnson Corp. V. NLRB, 608 F.2d 1303, 1306 n. 4 (9th Cir. 1979) ("The enumerated functions in Section 2(11) are to be read in the disjunctive, and the existence of any of them, regardless of the frequency of their performance, is sufficient to confer supervisory status.") However, any power listed in 29 U.S.C. § 152(11) "must involve the exercise of independent judgment in order to brand the holder of the power as a supervisor," as is stated in the statute. Telemundo de Puerto Rico, Inc. v. NLRB, 113 F.3d 270, 274 (1st. Cir. 1997). And the legislative history of the National Labor Relations Act makes clear that only those employees "vested with such genuine management prerogatives as the right to hire or fire, discipline, or make effective recommendations with respect to such actions" are to be considered supervisors. Patrick Hardin, The Developing Labor Law, Third Edition Vol. 2, page 1610 (1992) (quoting NLRB v. Security Guard Service, 384 F.2d 143, 147 (5th Cir. 1967)). Thus, the fact that an employee's position does contain one of the enumerated powers in the definition of a supervisor does not automatically deem that employee a supervisor. The Board, utilizing its discretion, may look at the "collective force of [the] factors" to determine whether a position meets supervisory status. See Telemundo de Puerto Rico, 113 F.3d at 275.
 Managerial Employees
Although managerial employees are not specifically listed as an excluded class of employees in the Act, our Supreme Court has held that they are, as a matter of public policy and legislative intent, excluded from collective bargaining. See e.g., Town of Westerly, 659 A.2d at 1108. In Town of Westerly, the court adopted the U.S. Supreme Court's definition of "managerial employees" as "those who formulate and effectuate management policies by expressing and making operative the decisions of their employers." 659 A.2d at 1108 (quoting NLRB v. Yeshiva University, 444 U.S. 672, 682 (1980)). The court went on to hold that "such employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management" to be considered managerial, and they "may be excluded as managerial only if [they] represent management interests by taking or recommending discretionary actions that effectively control or implement employer policy." Id. (citation omitted).
 Administrative Officials
Section 28-9.4-2(b)(1) excludes "elected officials and administrative officials" from the protections of the Act. The parties at bar urge very different definitions of the term "administrative official." The Town argues that this Court should adopt the definition of "administrative employees" used by the U.S. Department of Labor. The Department of Labor defines the term because the Fair Labor Standards Act (FLSA),29 U.S.C. § 213(a)(1), excludes "administrative employees" from its protections. Administrative employees are those:
 "(a) whose primary duty consists of:
 (1) the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers;
 (b) who customarily and regularly exercises discretion and independent judgment; and
 (c)(1) who regularly and directly assists a proprietor or an employee employed in a bona fide executive or administrative capacity. . . , or
 (2) who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or
 (3) who executes under only general supervision special assignments and tasks[.]" 29 C.F.R. § 541.2.
Furthermore, the regulations require such employees to dedicate at least 80 % of their workweek to such tasks. Finally, the regulations hold that any employee earning at least $250 a week, and whose primary duties consists of the work described in section (a), meets the descriptions of an administrative employee.
The Union argues that the FLSA is of no assistance to this Court, because this Court must define "administrative officials," while the FLSA exempts "administrative employees." Therefore, the Union urges this Court to define "administrative officials" as those employees who make up the "upper echelon" of appointed officials who have "the power to formulate and carry out the policies and duties of government office." Union's Memorandum at page 7.
This Court finds that the Department of Labor's (DOL) definition of administrative employee does not provide guidance here. The DOL drafted the definition to provide clarity to the FLSA. The purpose of the FLSA is "to eradicate. . . the evils attendant on low wages and long hours of service . . . ." Wirtz v. Patelos Door Corp., 280 F. Supp. 212
(E.D.N.C. 1968). The purpose of the Act is quite different. It is to "accord municipal employees the right to organize . . . and bargain [collectively] with municipal employers . . . ." G.L. 1956 § 28-9.4-1. Although a Rhode Island court shall look to federal labor law for guidance, if the law is not relevant it cannot provide such guidance. Therefore, this Court will not apply the DOL's definition of "administrative employees" to the Act's category of employees known as "administrative officials." Rather, this Court agrees with the Union in its reading of the plain language of § 28-9.4-2, which is that an administrative official is an employee who possesses the power to formulate and carry out the policies of the municipal employer, much like that of an elected official.
 Specific Positions Town Engineer
The Town argues that the Town Engineer position should not have been included in the bargaining unit, because the Town Engineer is a supervisory, managerial, and administrative employee.
The Town argues that the position is supervisory because the Engineer has three employees and an intern who "report" to him, because he assigns and inspects work for two Engineering Inspectors, because he is responsible for making effective recommendations as to the hiring of employees, and because he is generally "in charge" of the Town's engineering division.
The evidence of record demonstrates that the Town Engineer does assign work to the Engineering Inspectors. However, a question of fact exists as to the effectiveness of the Engineer's recommendations. The Engineer testified that he sat on a three person committee that made hiring recommendations to the Town Manager. The Board found that this was not conclusive evidence that he makes effective hiring recommendations. This is a finding of fact, to which this Court may not substitute its own judgment.
After the Board considered the collective factors that determine supervisory status, it determined that, notwithstanding the Engineer's ability to assign work to certain employees, the Engineer is not a supervisory employee. See Telemundo de Puerto Rico, 113 F.3d at 275. "On reflection," this Court "cannot say that the Board's choice was arbitrary or capricious." Id.
The Town also argues that the Engineer is a managerial employee because, among other things, he "works independently in supervising all technical operations and accomplishing the desired work results." Town's Memorandum, page 24. However, the Board found that there was no evidence of record that the Engineer "formulates or effectuates management policy by expressing and making operative the decisions of [the Town]." Board's Memorandum, pages 16-17. There is nothing in the record to suggest that the Board's decision concerning the Engineer's management status was not supported by the evidence of record.
Finally, the Town argues that the Engineer is an "administrative employee." The Town's argument is based on the fact that the Engineer performs non-manual office work, which requires technical expertise. As stated earlier, an administrative official is an employee who possesses the power to formulate and carry out the policies of the municipal employer. The Town has presented no evidence showing that the Board was erroneous in finding that the Engineer does not possess such authority. See Northern Montana Health Care Center v. NLRB, 178 F.3d 1089 (9th Cir. 1999) (Under the NLRA, the employer bears the burden of demonstrating supervisory status of employees).
The decision of the Board to allow the position of Town Engineer into the bargaining unit is supported by the competent evidence of record and is affirmed.
 Engineering Inspector
The Town argues that the Engineering Inspectors are exempt from the Act because they are "administrative employees." The Town contends these individuals are salaried employees performing highly technical work, not involving manual labor. However, as discussed above, to demonstrate that an employee is an administrative official, the Town must show that the employee possesses the authority to formulate and carry out the policies of the Town. The Town did not meet this burden. Thus, the decision of the Board to include the Engineering Inspectors in the bargaining unit is supported by the competent evidence of record and is affirmed.
 Building Official
The Town argues that the Building Official (also known as the "Building Inspector") is an administrative official and a supervisor. The Town argues that the Building Official's duties, such as issuing or denying building permits and inspecting buildings, require the interpretation of ordinances, which in turn requires independent judgment and discretion. The evidence of record supports the Town's contention that the Building Official exercises independent judgment in carrying out his responsibilities. However, the evidence of record demonstrates that the individual judgment was utilized in the technical aspects of his job, and that the Building Official does not possess the power to formulate and carry out the policies of the Town. Without such power, the Building Official cannot be considered an administrative official.
The Town argues that the Building Official is a supervisory employee because he "supervises a small staff." However, the Town offered no testimony to the Board showing that this position is supervisory. See Northern Montana Health Care Center, 178 F.3d 1089. Since the Board had no evidence before it showing that the Building Official had the ability to hire, fire, transfer, reward, discipline, or direct other employees, its finding that the position was not supervisory was not arbitrary or capricious. Thus, the Board's decision to include the Building Official in the bargaining unit is upheld.
 Director of Senior Services
The Town argues that the Director of Senior Services (also known as "Director of the Senior Center") is an administrative official, a supervisor, and a managerial employee. The Town notes that the Director's job description states that she "supervises . . . staff and also the volunteer workers." The job description also states that she "recruits, assigns, and supervises all personnel serving the [Senior] Center." Town's Memorandum, page 26 (citation omitted). The Town further contends that the Director has the authority to discipline workers and that she makes effective hiring recommendations.
The record reflects that the Director has never actually hired or fired an employee, but that she believes it is within her authority to recommend such actions to the Town Manager. The Board found that the Director does not have the authority to hire or fire actual employees. Although there is some evidence of record to the contrary, there is just as much evidence in support of the Board's finding.
The Director does have the ability to assign work to employees. However, as discussed earlier, a position meeting one element of the description of a supervisor does not lock the Board into determining that such a position is supervisory. The Board must be allowed to weigh the "collective force" of the factors that make a position supervisory. See Telemundo de Puerto Rico, 113 F.3d at 270. Here, the Board did weigh the collective force of the factors and determined that the Director's ability to assign, alone, does not make that position supervisory. This Court cannot say that such a determination was arbitrary or capricious.
The Town also argues that the Director's position is managerial. As a basis for this argument, the Town notes that the Director plans and develops programs at the Senior Center and sets the policies of the Center. However, as the Board correctly points out, making such decisions, which certainly require technical expertise, does not demonstrate that the Director formulates or effectuates management policy.
The Town also argues that because the Director is "in virtually complete charge of the Senior Center," she is an administrative official. Town's Memorandum, page 27. However, there is no evidence of record that the Director possess the power to formulate and carry out the policies of the Town. For the reasons stated, the decision of the Board to include the Director of Senior Services in the bargaining unit is supported by the substantial evidence of record, and is upheld.
 Golf Course Superintendent
The Town argues that the Golf Course Superintendent is a managerial, supervisory, and administrative position. The evidence of record shows that the Superintendent is responsible for the physical maintenance of the Town's golf course. In carrying out that responsibility, he assigns specific tasks to seasonal employees at the golf course. Furthermore, he makes recommendations to the Director of Recreation concerning the hiring and firing of employees, who in turn makes recommendations to the Town Manager.
The Board found the Superintendent did not have the authority to make effective recommendations, based on the fact that he did not make recommendations directly to the Town Manager, but instead to the Director of Recreation. While reasonable minds could differ as to whether that constitutes effective recommendations, the Board's finding was not arbitrary or capricious. As noted several times above, the fact that the Superintendent assigns workers does not automatically bestow supervisory status on him. The Board acted well within its discretion in determining that the Superintendent is not a supervisor.
The Town also contends that the Superintendent is a managerial employee and an administrative officer because he makes "managerial" decisions concerning the upkeep of the golf course, and because he manages a $320,000 budget for the course. These responsibilities, while requiring technical expertise, cannot be considered managerial, and do not involve the responsibilities shouldered by an administrative official. The decision of the Board to include the position of Golf Course Superintendent in the bargaining unit was not arbitrary or capricious, and is upheld.
 Golf Course Operations Manager
The Town argues that the position of Golf Course Operations Manager is supervisory, managerial, and administrative. The Town argues that the Operations Manager is a supervisory employee because he assigns the duties of ten Pro Shop employees, and interviews candidates and makes "effective hiring recommendations" based on those interviews. However, the Board found that the Operations Manager's role in hiring and firing was "minimal at best." Decision of the Board, page 20. The finding of the Board was not arbitrary or capricious, because the Operations Manager made his recommendation to the Director of Recreation, not the Town Manager. As discussed earlier, reasonable minds could infer that such an indirect recommendation qualifies it as not effective.
Furthermore, the position is not managerial. Although the Operations Manager does "manage the day to day operation of the golf course," Town's Brief, page 30, there is no evidence demonstrating that he formulates or effectuates management policies by making operative the decisions of the Town. See Town of Westerly, 659 A.2d at 1108. Likewise, there is no evidence that the Operations Manager acted as an administrative official, by formulating the policies of the Town. The Board's decision to include the Golf Course Operations Manager in the bargaining unit was supported by the evidence of record, and is upheld.
 Director of Planning
The Town argues that the Director of Planning is a supervisory, administrative, and managerial position. The Town notes that the Director's job description, which states that the Director "supervises . . . employees." Additionally, the Director testified that she makes effective hiring recommendations, as well as assigning and overseeing the work of employees. The Board disagreed as to the effectiveness of the Director's recommendations, because they had been rejected several times by the Town Manager.
This finding of fact by the Board cannot be substituted by this Court with its own finding. And, although the Director of Planning does assign work for employees, the Board did not find, after considering the collective force of the criteria for a supervisor, that assigning work alone makes the Director a supervisor.
The Town argues that the Director holds a managerial position because she represents the Town in contacts with outside agencies, she makes recommendations concerning Town policy, and she makes recommendations concerning collective bargaining. The Board found that the Director did not exercise the level of discretion necessary, within or independently of the Town's policy, to be considered a managerial employee. This finding is supported by the evidence of record. Furthermore, the Board found that the Director did not participate in negotiations concerning union contracts. She did mention to a management employee that a certain section of a union contract could be too inflexible for the Town, but the Board found that such minor input is not the equivalent of "participating" in union negotiations. Certainly such a finding cannot be seen as arbitrary or capricious.
Finally, the Town argues that the Director is an administrative official, because she makes recommendations to the boards she serves, she prepares the Department of Planning's budget, and she directs studies and projects. While this work certainly qualifies the Director as a professional employee, with highly technical job responsibilities, substantial evidence of record exists to suggest that the Director did not have the authority to formulate and carry out the policies of the Town. The Board did not commit an error of law in finding that the Director is not an administrative official, and its decision to include the Director in the unit is upheld.
 Principal Planner
The Town argues that the position of Principal Planner is managerial and administrative. The evidence of record demonstrates that the Principal Planner handles duties such as conducting studies concerning the Town's population trends, advising boards, and drafting ordinances. The Town argues that the Planner is a manager because she assists in formulating the Town's plan. The Town also argues that the Principal Planner is a manager because she takes over for the Planning Director in the Director's absence.
Nothing in the record suggests that the Principal Planner has the authority to formulate or effectuate the Town's policies. What she is able to do is to advise those who do formulate such policies. This is a job that involves a good deal of expertise, but the technical aspects of a job that make a position professional should not be confused with the responsibilities that make a position managerial.
Likewise, the Principal Planner is not an administrative official. She drafts ordinances, but such work is technical in nature, and does not demonstrate an authority to carry out the policies of the Town.
Rather, she possesses an advisory role. Thus, the Board was not arbitrary or capricious when it included the Principal Planner in the bargaining unit, and its decision to do so is upheld.
 Director of Welfare
The evidence of record demonstrates that the Board's decision to include the Director of Welfare in the bargaining unit was not arbitrary or capricious. The Town provided no evidence to this Court that the Board was erroneous in including the Director in the bargaining unit. The decision of the Board concerning the Director of Welfare is supported by competent evidence of record, and is upheld.
 Deputy Town Clerk
The Town argues that the Deputy Town Clerk is administrative, supervisory, and managerial.
The Town argues that the Deputy Clerk is a supervisory employee because she "supervises the work of clerical assistants." Town's Memorandum, page 36. However, the evidence of record makes clear that the Deputy Clerk is essentially a clerical employee. When asked whether she oversees other employees, the Deputy Clerk stated "only to the extent that they have questions of me." Transcript IX, page 23. No evidence was presented concerning the Deputy Clerk's ability to hire or fire employees, or to handle grievances. The Board was not arbitrary or capricious in its finding that she was not a supervisory employee.
The Town also argues that the Deputy Clerk is a managerial employee, because her job description calls for the use of independent judgment. However, no evidence was presented demonstrating that the Deputy Clerk used independent judgment in formulating or effectuating the Town's policy. Without such evidence, the Board's decision that this is not a managerial position cannot be seen as erroneous.
Likewise, the Board did not abuse its discretion in finding that the Deputy Clerk is not an administrative official. No evidence was presented demonstrating that she has input on Town policy.
The job, as the record demonstrates, is clerical. As such, the Board's decision to include the Deputy Town Clerk in the bargaining unit is upheld.
 Library Employees
The Town argues that the three Assistant Library Directors who have been included in the unit are exempt from the Act because of their duties. Furthermore, the Town argues that these individuals are not employees of the Town because they are employees of the Town's Free Library. This Court will address the latter argument.
The Town argues that employees of the Library are not employees of the Town, because the Library is governed by its own separate Board of Trustees. The Town argues that in Board of Trustees, Champlin Memorial Library, 694 A.2d 1185, our Supreme Court held that a library's board of trustees, not a municipality, has direct management and control over that library's employees. Thus, it would be illegal for the Town to negotiate a union contract with the Library employees.
The Board argues that the Town already does negotiate with other union employees of the Library, and as such, is not asserting this illegality theory in good faith. Furthermore, the Board argues that the Town has taken direct management and control of the Library (as demonstrated by its negotiating with the union employees), and as a result Board of Trustees does not apply here. The Board contends that the Board of Trustees holding is limited to situations where a library's board of trustees has actively taken control of, and directly manages, a library.
The Library was created under G.L. 1956 § 29-4-1 et seq. According to that section, a board of trustees of a library is given the exclusive possession and control over that library. § 29-4-6 7. It is the duty of the board of trustees to hire librarians and to fix their compensation. § 29-4-6.
Furthermore, according to our Supreme Court, a library's board of trustees, not the city or town, has direct management and control over the library's employees. Board of Trustees, 694 A.2d at 1192.
This direct management and control of a library arises as a matter of law, not as a matter of fact. Id.; see also §§ 29-4-5, 6, 7. Therefore, this Court finds that as a matter of law, the Board of Trustee of the Town's Free Library is the employer of the Library's employees. As such, the Assistant Library Directors do not belong in the bargaining unit.[1]
Director of Community Development and Principal Planner/Environmental Coordinator The Board included two other positions, the Director of Community Development and the Principal Planner/Environmental Coordinator, in the bargaining unit. Prior to the election, these positions were abolished. Although the parties addressed these positions in their memoranda, the appeal of the Board's decision concerning these two specific positions is moot and will not be addressed by this Court.
 Conclusion
After a review of the entire record this Court finds that the Board's decision to include the Town Engineer, Engineering Inspectors, Building Official, Senior Services Director, Golf Superintendent, Golf Operations Manager, Director of Planning, Principal Planner, Director of Welfare, and Deputy Town Clerk, is supported by substantial, reliable and probative evidence of record, and is not affected by error of law. Substantial rights of the Town have not been prejudiced. Accordingly, the decision of the Board, as to those positions, is affirmed. Furthermore, this Court finds that the Board's decision to include the Assistant Library Directors in the bargaining unit was affected by an error of law.
Accordingly, the decision of the Board, as to those employees is reversed.
[1] As mentioned above, the Board contends that the Town's argument concerning the illegality of bargaining with the Assistant Directors is disingenuous, since it already bargains with certain Library employees. However, this Court will not uphold the inclusion of these three particular employees into a bargaining unit in which they do not belong simply because the Town and other employees of the Library have already engaged in similar inappropriate bargaining.