[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to Rule 57 of the Rhode Island Superior Court Rules of Civil Procedure, retired municipal employees Edward S. Abad, et al ("Police Plaintiffs") and John Arena, et al. ("Firefighter Plaintiffs") filed the underlying requests for declaratory and injunctive relief to resolve an ongoing pension controversy. The controversy centers on the Plaintiffs' rights to receive cost-of-living adjustment (COLA) benefits from the City of Providence ("City"). The Plaintiffs ask this Court to declare which document governs the terms and conditions of their COLA benefits and to determine the viability of ordinances passed by the Providence City Council ("City Council") which attempt to retroactively burden the applicable COLA benefits. In accordance with Rule 42, the Court consolidated the cases filed by the Police and the Fire Plaintiffs because they share common questions of law and fact. Jurisdiction is pursuant to G.L. (1956) § 9-30-1.
 FACTS AND TRAVEL
The history of the Police and Fire Department pension controversy resembles a long and winding road rife with many twists and turns. The numerous competing interests add to the complexity of this litigation. These interests include (1) the retirees; (2) the City; (3) the City Council; (4) the Fraternal Order of Police ("FOP"); and (5) the International Association of Fire Fighters ("IAFF"). In order to determine the appropriate declaration to resolve this controversy, it is necessary to provide the relevant — albeit lengthy — background.
Until 1980, the General Assembly had exclusive authority to legislate retirement benefits for City employees through the enactment of public laws. After the enactment of the Providence Home Rule Charter ("Charter") in 1981, the City Council replaced the General Assembly as the legislative authority for the establishment and control of the municipal pension system. The City Council never invoked this authority until February 1991 when it passed Providence, R.I., Ordinance 1991 ch. 5 ("Ordinance 1991-5"). To implement procedures for control of the municipal pension system, Ordinance 1991-5: (1) established the Retirement Board to administer and manage the municipal employee retirement system; (2) provided for the financing and investing of various pension and annuity funds; (3) set the qualifications for member eligibility; (4) delineated creditable service and benefits payable; and (5) defined the role of elected officers in the overall pension scheme.
Prior to the passage of Ordinance 1991-5, the last ratified collective bargaining agreement ("CBA") between the City and the Providence Police Department covered the period from July 1, 1989 through June 30, 1991. With respect to the Fire Department, the last ratified CBA covered the period from July 1, 1990 through June 30, 1992. Before the execution of the 1989-91 Police CBA and the 1990-92 Fire CBA, members of both the Police and the Fire Departments contributed 8% of their salary to the City retirement fund with the expectation of receiving an annual 3% non-compounded COLA following their retirement. When negotiating the terms of the 1989-91 Police CBA and the 1990-92 Fire CBA, the parties agreed to make certain changes to the contribution/retirement benefit system. Because said negotiations occurred prior to the enactment of Ordinance 1991-5, the proposed changes to the pension system required General Assembly approval. Given the time required to obtain said approval would result in significant delays in ratifying the CBAs, both the 1989-91 Police CBA and the 1990-92 Fire CBA incorporated Memoranda of Agreement which stated that the City would seek General Assembly approval of the proposed changes subsequent to ratification.
On January 24, 1990, the General Assembly passed public laws approving the proposed changes to the pension system for members of the Providence Police and Fire Departments. Pursuant to P.L. 1990, ch. 212, § 1, the Police Department members increased their contributions to the City retirement fund over a two-year period from 8 to 8.75% during the first year and from 8.75 to 9.5% during the second year.[1] Similarly, P.L. 1990, ch. 469, § 1 enacted an almost identical contribution/retirement benefit scheme for members of the Fire Department.[2] During the same two-year period, the City agreed to furnish members with a two-part increase to the COLA benefits from 3% non-compounded to 5% compounded. As part of the comprehensive pension system established by Ordinance 1991-5, the City Council adopted the COLA formulas set forth in the P.L. 1990, chs. 212, 469. See Ordinance 1991-5 § 9(17), (18).
Following the enactment of Ordinance 1991-5, the bargaining representatives encountered no significant problems in executing the two subsequent Police CBAs. First, in ratifying the 1991-92 Police CBA, the City Council made no changes to the COLA benefit defined in Ordinance 1991-5. Next, when negotiations reached an impasse for the 1992-93 Police CBA, the parties submitted the CBA to binding interest arbitration as required by G.L. (1956) § 28-9.2-9(d) thereby obviating the need for City Council ratification.[3]
Despite the relative ease of the 1991-92 and 1992-93 Police CBAs, problems arose during negotiations for the 1993-95 Police CBA and the 1992-95 Fire CBA. On or about September 14, 1993, the City and the FOP concluded negotiations regarding the terms and conditions of the next Police CBA that would cover the period from July 1, 1993 through June 30, 1995. Similarly, on June 30, 1992, the City and the IAFF concluded negotiations on the 1992-95 CBA. Both proposed CBAs were signed by Mayor Vincent A. Cianci ("Mayor") and the respective presidents of the FOP and the IAFF.
Although both the Mayor and the respective union presidents signed the proposed CBAs, the ratification process was not yet complete. Enacted in 1981, Ordinance § 17-27 mandates that the City Council ratify all proposed CBAs for municipal employees. Section 17-27 states:
 "(a) No collective bargaining agreement between the City of Providence and any labor organization shall become effective unless and until ratified by the Providence city council.
 (b) Each contract, before submission to the city council, shall contain a fiscal note.
 (c) At least one public hearing shall be held prior to city council ratification of any contract."
Despite the clear mandate of Ordinance § 17-27, the City Council never had the opportunity to review the proposed CBAs. Due to a power struggle between the Mayor and the City Council, the Mayor refused to submit either the 1993-95 Police CBA or the 1992-95 Fire CBA to the City Council for ratification in contravention of § 17-27.
Until 1991, the mayors of the City[4] routinely complied with § 17-27, and the City Council routinely approved the proposed CBAs for municipal employees. Nevertheless, the impetus of the power struggle occurred in February 1992, when the Mayor submitted five contracts to the City Council for ratification. For the first time, the City Council rejected one of the five (5) submissions.
Further aggravating the situation, in July 1992, the City Council passed Ordinance 401 which prohibited the mayor from entering into any labor contract longer than one year in duration. In contravention of Ordinance 401, the Mayor entered into a three-year contract with Local No. 1033 of the Laborers' International Union of America. To compound problems, the Mayor refused to oblige the City Council's request for review of the contract. Consequently, the City Council filed a declaratory judgment action in superior court to compel the Mayor to comply with § 17-27 and submit the Local No. 1033 CBA to the City Council for ratification. In denying the City Council's request, the trial judge found that the § 17-27, which required City Council ratification to execute CBAs, conflicted with G.L. (1956) § 28-9.4-5 — the obligation of the City to bargain with the union in good faith Accordingly, the trial judge held that the Local No. 1033 CBA was valid, binding, and enforceable. After the entry of judgment, the City Council argued that Ordinance 401 rendered the second and third years of the Local No. 1033 CBA void and unenforceable. Accepting the City Council's argument, the trial justice issued a modified order which limited the validity of the Local No. 1033 CBA to one year. Both parties appealed portions of the trial judge's ruling.
On December 7, 1994, the Rhode Island Supreme Court reversed the trial judge's decision. See Providence City Council v. Cianci, 650 A.2d 499
(R.I. 1994). The Supreme Court found that the City Council had the authority under the Charter to enact Ordinance § 17-27. Accordingly, the Supreme Court held that the Mayor's refusal to submit the proposed Local No. 1033 CBA to the City Council clearly violated the terms of Ordinance § 17-27. Consequently, the Court held that the CBA signed by the Mayor was invalid and unenforceable with respect to each of the three years.Id. at 502.
The City Council was well aware that the Supreme Court's holding inCianci also rendered the 1993-95 Police CBA and the 1992-95 Fire CBA invalid and unenforceable for want of ratification. Only eight months after the Cianci decision, the City Council passed Ordinance 1995-17 which ignited the instant controversy. The purpose of Ordinance 1995-17 was to reduce the COLA benefit provided to current and former members of the Providence Police and Fire Departments in order to ease the burden on the City retirement coffers. Ordinance 1995-17 reads in relevant part:
 "Any retired class B employee and any beneficiary of such employee who receives any service or any ordinary disability retirement allowance or any accidental disability retirement allowance pursuant to the provisions of this article shall, on the first day of January next following the third anniversary date of his/her retirement, receive a cost-ofliving retirement adjustment, in addition to the retirement allowance, in an amount equal to three (3) per cent [sic] of the retirement allowance, not compounded. In each succeeding year thereafter, on the first day of January, the original retirement allowance shall be increased by three (3) per cent [sic], not compounded, to be continued during the lifetime of said retired employee or beneficiary. For the purpose of said computation, credit shall be given for a full calendar year, regardless of the effective date of such service retirement allowance. All cost-of-living retirement adjustments granted to retirees under this section shall be considered voluntary gratuities. The payment of such voluntary gratuities may be reduced or suspended by Ordinance at any time upon a finding by the City Council that due to the existence of a depressed economy affecting the fiscal condition of the City it becomes expedient to reduce expenses in order to avoid or minimize a tax increase."
The City Council predicated the COLA reduction on the following determinations: (1) the implementation of the 5% COLA had caused a decline in the growth of the pension fund; (2) the disproportionate burden shouldered by the taxpayer to fund the City's contribution had escalated from 24% in 1989 to a projected 46% for 1996 year; and (3) the City could no longer afford or justify the provision of a 5% COLA as a supplemental benefit.See Ordinance 1995-17 § (1)(A)(13)-(15). Based on these determinations, the City Council concluded that the City's fiscal health necessitated a return to a 3% simple interest COLA. Id.
The Plaintiffs' cause of action arose when the City Council attempted to retroactively apply the COLA reductions to former Class B employees who retired prior to August 5, 1995 — the effective date of Ordinance 1995-17. The retroactive application reduced the Plaintiffs' COLA benefit from 5% compounded to 3% non-compounded.
Further pushing the envelope, the City Council subsequently passed Ordinance 1996-4 which again amended § 17-197 to read as follows: (note changes are bolded):
 "Any retired class B employee and any beneficiary of such employee who receives any service or any ordinary disability retirement allowance or any accidental disability retirement allowance pursuant to the provisions of this article, shall, on the first day of January next following the third anniversary date of his/her retirement, receive a cost-ofliving retirement adjustment, in addition to the retirement allowance, in an amount equal to three (3) per cent [sic] of the said retirement allowance, not compounded, on upto the first Ten Thousand ($10,000.00) Dollars of said retirement allowance. In each succeeding year thereafter, on the first day of January, the original retirement allowance shall be increased by three (3) per cent, not compounded, to be continued during the lifetime of said retired employee or beneficiary. For the purpose of said computation, credit shall be given for a full calendar year, regardless of the effective date of such service [said] retirement allowance. In each succeeding year thereafter, on the first day of January, the original retirement allowance shall be increased by three (3) per cent [sic], not compounded, on upto [sic] the first Ten Thousand ($10,000.00) Dollars of the original retirement allowance, to be continued during the lifetime of said retired employee or beneficiary.
 All Any cost-of-living retirement adjustments granted to retirees a retired employee or any beneficiary of said employee under this section shall be considered voluntary gratuities. The payment of such voluntary gratuities may be reduced or suspended by Ordinance at any time upon a finding by the City Council that due to the existence of a depressed economy affecting the fiscal condition of the City it becomes expedient to reduce expenses in order to avoid or minimize a tax increase."
Consequently, Ordinance 1996-4 further slashed the Plaintiffs' already reduced COLA benefits from 3% non-compounded to 3% non-compounded applied only to the first $10,000 of their pension benefits. After the Plaintiffs filed the underlying actions, the City ceased paying COLA benefits altogether to the litigants in this case.
The original action filed by the Police Plaintiffs included eighty (80) former members of the Providence Police Department.[5] During the course of litigation, the City settled with sixtyeight (68) of the original Police Plaintiffs. In addition, the City conceded that ten of the remaining twelve Police Plaintiffs had retired under ratified contracts and resolved their claims. Consequently, only two of the original Police Plaintiffs remain — Leonard Wahl ("Wahl") and John Simoneau ("Simoneau"). Wahl retired on October 15, 1993, and Simoneau retired on May 24, 1995.
At its inception, the action filed by the Fire Plaintiffs contained eighty-two (82) former members of the Providence Fire Department.[6]
Through either motion or stipulation of the parties, three (3) additional Fire Plaintiffs were added. The City resolved the claims of the eight (8) who retired under ratified contracts. Of the seventy-seven (77) remaining Fire Plaintiffs, seventy-six (76) retired between July 1, 1993 and June 30, 1995. The last Fire Plaintiff, Alfred Mello, retired in 1979 from the Fire Department after 22 years of service. He, then, accepted the director of communications position which he held until his retirement in February 1987. At the request of the Providence Fire Department, he returned to the director position from January 1991 until he finally retired in February 1992. Although director of communications is a civilian position, it falls under the Class B retirement systems covering police and fire personnel.
The remaining Fire and Police Plaintiffs ask this Court to declare the "actions of the City Council in enacting certain City ordinances to be illegal and/or null and void in that they apply retroactively to those plaintiffs who had already retired and had already been receiving benefits." Pl.'s Fire Compl. ¶ 57 (May 4, 2001); see also Pl.'s Police Compl. ¶ 87 (May 4, 2001). Additionally, the Plaintiffs seek mandatory injunctive relief compelling the City to issue the COLA benefits to which they are entitled. Finally, the Plaintiffs seek attorneys' fees and damages for breach of contract.
Conversely, the City requests a declaration that the Fire Plaintiffs' entitlements to COLA benefits are governed by interest arbitration panel designated pursuant to the Firefighters Arbitration Act, G.L. (1956) §28-9-1, et seq. ("FFAA"). Nevertheless, the City maintains that the terms of the Police Plaintiffs' COLA benefits are governed by the series of ordinances enacted by the City Council.
 STANDARD OF REVIEW
Pursuant to the Uniform Declaratory Judgments Act, the Superior Court has the power to:
 "declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." G.L. (1956) § 9-30-1.
"The Uniform Declaratory Judgments Act confers broad discretion upon the trial justice as to whether he or she should grant declaratory relief."Cruz v. Wausau Ins., 866 A.2d 1237, 1240 (R.I. 2005). The purpose of the broad discretion enjoyed by the Superior Court in declaratory judgment actions is to "facilitate the termination of controversies." BradfordAssocs. v. R.I. Div. of Purchases, 772 A.2d 485, 489 (R.I. 2001) (quotingCapital Properties, Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999) (quoting Fireman's Fund Insurance Co. v. E.W. Burman, Inc., 120 R.I. 841,845, 391 A.2d 99, 101 (1978)).
To properly address the Plaintiff's request for declaratory relief, it is imperative to start from the premise that the pension controversy is predicated on the undisputed fact that both the 1993-95 Police CBA and the 1992-95 Fire CBA are invalid and unenforceable. Simply put, had the Plaintiffs retired pursuant to valid and enforceable CBAs, the terms of those CBAs with respect to the COLA provision would control.
The Contract Clause of the R.I. Const. art. I, § 12, which prohibits any legislative body from passing an "ex post facto law, or law impairing the obligation of contracts," establishes the supremacy of a valid and enforceable CBA. Accordingly, the Contract Clause renders the City Council powerless to enact any law or ordinance which substantially impairs contractual obligations set forth in a valid CBA executed prior to said law or ordinance. See Nonnenmacher v. City of Warwick,722 A.2d 1199, 1202 (R.I. 1999). Consequently, a valid CBA — achieved through either City Council ratification or binding interest arbitration — is the highest controlling authority on the contractual rights delineated therein.
"[N]othing in [the Charter] has an inhibiting effect on the General Assembly's overriding power to legislate even on local matters as long as it does so in a general act applicable to all cities and towns alike and does not affect the form of government of any city or town." ProvidenceLodge No. 3, 730 A.2d 17, 20 (R.I. 1999) (quoting City of Cranston v.Hall, 116 R.I. 183, 185-86, 354 A.2d 415, 417 (1976)).[7] Passed subsequent to the enactment of the Charter, the Municipal Police Arbitration Act ("MPAA") and the FFAA provide for one instance which obviates the need for City Council ratification. When the negotiations between the City and a labor union reach an impasse, the proposed collective bargaining agreement is submitted to binding arbitration. Once the arbitrator renders a decision, that decision binds both the City and the labor union. See G.L. (1956) § 28-9.2-9(d).
Following the Supreme Court's holding in Cianci, the 1993-95 Police CBA and the 1992-95 Fire CBA are unquestionably invalid and unenforceable because they were not ratified by the City Council as mandated by Ordinance § 17-27. Nevertheless, the City funded a 5% COLA benefit to these Plaintiffs from the time of their retirement until the enactment of Ordinance 1995-17 which reduced the COLA benefit to 3% non-compounded. Although the City's payment of the COLA benefit ceased at the Plaintiffs' initiation of the instant litigation, the question remains as to what document prompted the City to pay this 5% COLA in the absence of a valid and enforceable CBA.
To resolve the instant controversy, the Court must address two primary issues. The first issue before the Court is which document governed the Plaintiffs' right to COLA benefits at the time they retired — the last ratified CBA or Ordinance 1991-5. Having determined what document governs, the Court must then decide whether the City Council could retroactively apply Ordinance 1995-17 and its subsequent revisions thereby detrimentally affecting rights of former members of the Fire and Police Department who retired prior to August 5, 1995.
 The Last Valid Collective Bargaining Agreements[8]
The Plaintiffs have presented the Court with two alternative authorities which could furnish the terms and conditions of the COLA benefit to which they are entitled — the last ratified CBAs or Ordinance 1991-5.
The Plaintiffs raise two arguments to support their contention that the Court could look to the last valid CBAs as the controlling authority. First, the Plaintiffs direct the Court's attention to G.L. (1956) §§28-9.1-17 and 28-9.2-17, parallel provisions in the MPAA and FFAA respectively which read:
 "[a]ll contractual provisions contained in a collective bargaining agreement entered into pursuant to the provisions of this chapter shall continue in the following collective bargaining agreement unless either the bargaining agent or the corporate authority shall, in writing, within the thirty (30) day period referred to in [§ 28-9.1-7 and] § 28-9.2-7, propose a change in any contractual provisions."
The Plaintiffs contend that because neither the Mayor nor the unions proposed changes to the COLA benefits set forth in the last ratified Police and Fire CBAs, the Court could construe these sections to mean that the COLA in effect in the last ratified CBAs continue in force.
The Court, however, is compelled to reject this argument as applied to the facts of the instant case. Pursuant to § 28-9.2-3(1), the City Council is included in the definition of `corporate authorities.' See supra
n. 3. As such, the application of §§ 28-9.1-17, 28-9.2-17
to the case at bar would require the Court to employ a rather sizeable assumption as to the actions of the City Council in the event they had the opportunity to review the 1993-95 Police CBA and the 1992-95 Fire CBA. Because the Mayor withheld the contracts in violation of Ordinance § 17-27, the City Council never had that opportunity. City Council ratification is a critical step in the execution of a CBA; therefore, the Court will not speculate as to whether the City Council would have objected to the continuance of the COLA provisions from the last valid CBAs.
In addition to the MPAA/FFAA provisions, the Plaintiffs posit that the Court could follow the Supreme Court's holding in Warwick School Committee v. WarwickTeachers' Union, Local No. 915, 613 A.2d 1273 (R.I. 1992). The Plaintiffs argue that because they retired pursuant to invalid CBAs, and the FOP/IAFF and the City have not negotiated or ratified a new contract for the time period in question, then, the Court could follow the lead of the State Labor Relations Board and conclude that the previous CBAs govern.[9]
In its first decision on this case regarding jurisdiction, this Court dismissed the City's reliance on Warwick:
 "In [Warwick], the dispute was between the City and a union; in the instant matter, the dispute is between the City and individuals. In addition, in [Warwick] the parties were actively engaged in contract negotiations, while in the present case, labor negotiations are long since over. Accordingly, the City's reliance on [Warwick] is misplaced." Abad v. City of Providence, 2004 R.I. Super. LEXIS 174 at *23-24.
For the same reasons quoted above, the Court rejects the Plaintiffs' suggestion that Warwick is persuasive. If the Court had ultimately decided that the terms of the last CBAs continued in force, the Warwick
decision would have provided a springboard from which the Court could fashion its declaration of the Plaintiffs' rights to the disputed COLA benefits. However, because the Court rejected the last valid CBAs as the governing documents, the Supreme Court's holding in Warwick is of no avail to the Plaintiffs.
 Ordinance 1991-5
Although no valid and enforceable CBA was in place at the time the Plaintiffs retired, neither party disputes the fact that Ordinance 1991-5 was properly enacted in February 1991 and continued in force during the time period from 1992-1995. For the following reasons, the Court finds that Ordinance 1991-5 is the appropriate source of the terms and conditions regarding the COLA benefit to which the Plaintiffs are entitled.[10]
Pursuant to Charter § 102:
 "The inhabitants of the City of Providence shall be a body politic and corporate under the name of the City of Providence and shall have, exercise and enjoy all the rights, immunities, powers, privileges and franchises and shall be subject to all the duties and obligations of a municipal corporation under the Constitution and laws of the State of Rhode Island and of the United States of America."
As a municipal corporation, the City of Providence through the City Council has "the power and authority to act in all local and municipal matters and to adopt local laws and ordinances relating to its property, affairs and government." Charter § 103. In describing the broad scope of legislative power and authority enjoyed by the City Council, Charter § 401 states in relevant part:
 "The legislative powers of the city shall be vested in a city council, which shall have and exercise all powers vested in it by this Charter and by the laws of the state. The powers and duties of the city council shall include, without limitation, the following:
 (a) To enact such ordinances as the city council may consider necessary to insure the welfare and good order of the city and to provide penalties for the violation thereof[.]"
Given the broad delegation of powers conferred by the Charter, the City Council was well within its authority to establish a comprehensive retirement system as delineated in Ordinance 1991-5. Given these undisputed facts, the Court sees no reason to belabor the obvious. Consequently, the Court will apply the terms and conditions of the COLA benefit as set forth in Ordinance 1991-5 because it was the controlling authority in effect at the time the Plaintiffs retired. Having reached this conclusion, the Court must address the remaining issue — whether the City Council has the authority to implement a retroactive decrease in COLA benefits.
 Retroactive Application
The first step in resolving the present controversy is to explore the nature of the disputed COLA benefits. "The purpose of police [and fire] pension acts is to attract and hold in police [and fire] service superior personnel by adequately compensating them for arduous and hazardous duties." Eugene McQuillin, Municipal Corporations vol. 16A, § 45.13.05, 96 (3d. ed. rev'd. West Publishing Group). Typically, courts classify pension benefits as either contractual or gratuitous in nature. Jurisdictions that adhere to a contractual approach view pension benefits as deferred compensation for previous services rendered. See Commonwealthex rel. Zimmerman v. Officers Employees Retirement Bd., 503 Pa. 219,222, 469 A.2d 141, 142-43 (1983) ("In Pennsylvania we have rejected the view that pension benefits are mere gratuities or expectancies subject to the whim of the munificent governmental employer. To the contrary, it is the well settled law of this jurisdiction that the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past."). Under a contract theory, "[t]he right to . . . deferred compensation has been considered to vest when the employee completes the years of eligibility." In re Almeida,611 A.2d 1375, 1385 (R.I. 1992).
Other courts view pension benefits as gratuitous. See Haverstock v.State Public Employees Retirement Fund, 490 N.E.2d 357, 361 (Ind.Ct.App. 1986) ("Pensions are mere gratuities springing from the appreciation and graciousness of the state.").
Extracting portions of both the contractual and gratuitous classifications, the Rhode Island Supreme Court has joined the jurisdictions that have adopted a middle-ground approach to the classification of pension benefits. In re Almeida, 611 A.2d 1375 (R.I. 1992). In Almeida, the Court expressed the following rationale:
 "We . . . decline expressly to categorize a pension because such a limiting categorization might lead to an improper consequence. Instead we conclude that a pension comprises elements of both the deferred compensation and the contract theories. The right to deferred compensation vests upon meeting the terms of employment, but that vesting is subject to divestment because it is conditioned on continued honorable and faithful service." Id. at 1386.
Under this middle-ground approach, pensions are gratuitous because they do not vest at the time employment commences. Rather, they are contingent upon faithful service for a stated number of years and subject to divestment under certain limited circumstances. See also Spina v.Consolidated Police, etc., Pension Fund Com., 41 N.J. 391, 401-02,197 A.2d 169, 174 (1964) ("[T]here is no profit in dealing in labels such as "gratuity," "compensation," "contract," and "vested rights." None fits precisely, and it would be a mistake to choose one and be driven by that choice to some inevitable consequence.").
From the Supreme Court's holding in Almeida, it is clear that pensions do not fit neatly in predetermined boxes, because not all pension benefits are identical in nature. As such, the instant controversy requires the Court to determine which box — contractual, gratuitous, or some hybrid thereof — best fits the COLA benefit at issue. To begin this fitting process, the Court begins from the basic tenet that: "[t]he right of police officers and firefighters to pensions is governed by the pension laws applicable, and by the rules relating to municipal officers and employees generally." McQuillin, Municipal Corporations § 45.13.05 at 97.
Unlike its subsequent revisions, Ordinance 1991-5 is silent on the nature of the COLA benefit. In Ordinance 1995-17, the City Council amended Ordinance § 17-197 — the COLA provision — to include the following language:
 "All cost-of-living retirement adjustments granted to retirees under this section shall be considered voluntary gratuities. The payment of such voluntary gratuities may be reduced or suspended by Ordinance at any time upon a finding by the City Council that due to the existence of a depressed economy affecting the fiscal condition of the City it becomes expedient to reduce expenses in order to avoid or minimize a tax increase."[11]
Due to the City Council's explicit characterization of the COLA benefit, Ordinance 1995-17 renders all future COLA benefits gratuitous in nature and subject to the will of the City Council. Given the express authority of the City Council under the Charter to enact such ordinances, the Court concludes that the City Council was well within its authority to prospectively amend COLA benefits for members of the Police and Fire Departments who retired subsequent to the enactment of Ordinance 1995-17. Providence Lodge No. 3, 730 A.2d at 19 (City Council has the right to amend COLA prospectively by ordinance).
Although the City Council may, indeed, prospectively affect COLA benefits for former members of the Police and Fire Department, the pivotal issue for purposes of the instant litigation is whether the City Council may retroactively burden COLA benefits for members of the Police and Fire Department who retired after the expiration of the 1992-93 Police CBA or the 1990-92 Fire CBA but prior to the enactment of Ordinance 1995-17.
Ordinance 1991-5 definitively states: "the eligibility for a retirement allowance and the amount of such allowance shall be determined in accordance with the provisions of the ordinance to provide for the retirement of employees of the City of Providence as in effect on thelast day of a member's employment." Ordinance 1991-5 § 9(13) (emphasis added). Ordinance 1991-5 § 8(2)(a),(c) defines `retirement allowance' as
 "an annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement and . . . if the member is a class B employee, a pension which together with his normal annuity, exclusive of any excess annuity, shall be equal to onefortieth of his final compensation multiplied by the first twenty years of his total service credited, and equal to one-fiftieth of his final compensation multiplied by the number of years and, in addition, an excess annuity which shall be the actuarial equivalent of his accumulated excess contributions at the time of his retirement; provided, however, that no Class B employee shall receive a service retirement allowance, exclusive of any excess annuity, in excess of seventy-five (75%) percentum of his final compensation." (Emphasis added).
Section 1(13) defines `pension' as: "annual payments for life derived from appropriations provided by the City of Providence under the provision of this ordinance." The Court finds that the COLA benefits constitute an appropriation provided by the City Council derived from Ordinance 1991-5 such that the COLA benefit falls within the parameters of the Plaintiffs' retirement allowance.
"Under the guise of construction, the court will not rewrite the law, add to it what has been omitted, omit from it what has been inserted, or give it an effect beyond that gathered from the plain and direct import of the terms used." McQuillin Municipal Corporations § 45.13.05 at 102. Despite the City's valiant effort to classify the COLA benefit as gratuitous in Ordinance 1995-17, such language is noticeably absent from its predecessor — Ordinance 1991-5. Given that Ordinance 1991-5 undisputedly lacks the classification of the COLA benefit as gratuitous, the Court will not add to Ordinance 1991-5 what the City Council omitted. Although the City Council remedied the omission in subsequent revisions, the Court looks exclusively to the plain and direct import of the terms used in Ordinance 1991-5 because only those terms establish the benefits which the retirees developed a reasonable expectation of receiving.
In rendering decisions on labor disputes, the Rhode Island Supreme Court has "recognized the persuasive force of federal cases in this field in view of the parallels between our system of labor regulations and the federal system." Westerly Lodge No. 10 v. Town ofWesterly, 659 A.2d 1104, 1105 (R.I. 1995).
In Bd. of Trustees of the Sheet Metal Workers' Nat'lPension Fund v. Commr. of Internal Revenue, 318 F.3d 599
(4th Cir. 2003), the Fourth Circuit addressed a similar question regarding COLA benefits — whether the elimination of a COLA benefit added subsequent to the plaintiffretirees date of retirement violated29 U.S.C. § 1054(g) — the anti-cutback rule of the Employee Retirement Income Security Act ("ERISA"). The anti-cutback rule prohibits a reduction in accrued benefits via an amendment to a retirement plan and preserves the centrality of ERISA's object of "protecting employees' justified expectations of receiving the benefits their employers promise them." Cent. Laborers'Pension Fund v. Heinz, 541 U.S. 739, 124 S. Ct. 2230, 2235
(2004). The Court held that the analysis turned on the plan's definition of accrued benefits.
In Sheet Metal Workers, the plaintiffs were employees who retired before the addition of the COLA benefit to their retirement plan in 1991. In November 1990, the trustees of the Sheet Metal Workers' National Pension Fund amended the pension plan to include a COLA benefit effective January 1, 1991. In 1992, the trustees voted to provide this COLA benefit to all current and former employees. Shortly thereafter, the trustees realized that they had underestimated the cost of the COLA benefit expansion. Consequently, the trustees amended the plan to eliminate the COLA benefit for employees who retired before January 1, 1991.
Relying on a provision in the pension plan which stated that the terms of the pension plan at the time an employee retired determines the pension to which he or she was entitled, the Court found that the terms of the retirement plan in effect at the time the plaintiffs retired did not include the disputed COLA benefit. Id. at 605. As a result, the Court reasoned that the COLA benefit could not be considered an accrued benefit for these plaintiffs, because they had no reason to expect that their pension would provide a COLA during retirement. Id.
Although Sheet Metal Workers specifically interprets ERISA, the issue presented — whether the trustees could eliminate the COLA benefit without violating the anti-cutback rule — is directly analogous to the case at bar. In the instant case, the issue is whether the COLA benefits codified by Ordinance 1991-5 constituted a vested or gratuitous benefit such that the COLA benefit could not be reduced by a subsequent act of the City Council. As the Court in Sheet Metal Workers focused on the terms of the plaintiffs' pension plan at the time they retired to determine if the COLA was an accrued benefit, this Court must reference the terms and conditions of the Ordinance in place at the time the Police and Fire Plaintiffs retired to determine whether the COLA benefit vested at the time of their retirement. If the Court finds that the COLA benefit did, indeed, vest at the time the Plaintiffs retired, any subsequent reduction would be null and void.
After an extensive review of Ordinance 1991-5 provisions regarding the COLA benefit, the Court finds that the terms and conditions clearly establish the Plaintiffs' right to the promised COLA benefit — 5% compounded. The Court finds that the nature of the COLA benefit is such that it vested upon the Plaintiffs' faithful completion of service and subsequent retirement. Consequently, any subsequent attempt by the City Council to retroactively diminish the Plaintiffs' COLA benefit violated the Plaintiffs' vested contractual right to the COLA benefit as an integral part of their retirement allowance.
 Arbitrator's Jurisdiction
Without rehashing this Court's previous decision on jurisdiction, the issuance of the arbitration panel's decision on the 1992-93 Fire CBA on April 4, 2005 compels this Court to answer a question left open in the previous decision — i.e., whether the interest arbitration panel has the authority to determine COLA benefits for former members of the Police and Fire Departments who have since retired.[12] The interest arbitration panel addressed the sole issue of proper resolution of the applicable COLA benefit in the Fire CBA covering the period from July 1, 1992 through June 30, 1993. Consequently, the award applies only to those former members of the Fire Department who retired between July 1, 1992 and June 30, 1993.
After weighing the evidence presented by the City and the Union, the panel issued the following award:
 "For the parties' collective bargaining agreement effective July 1, 1992, to June 30, 1993, the pension cost-of-living allowance shall be 3% compounded, calculated on the basis of the entire retirement allowance. The COLA shall commence in the January following the third anniversary of the employee's retirement.
 The retirement allowance shall be calculated on the basis of an average of the employee's three highest years of salary, including longevity. The employee contribution to the retirement system during the term of the 1992 Agreement shall be 9.5% of salary and longevity.
 This award shall apply to all employees who retired during the term of the 1992 Agreement. The City shall make those individuals whole for the difference between the retirement allowance they have received and the retirement allowance they would have received had the 1992 Agreement contained the benefits set forth in this award." In the matter of the interest arbitration between Providence Firefighters, Local 799, Intern'l Assoc. of Firefighters and City of Providence, AAA #11 390 00149 02 at p. 60 (April 4, 2005).
Although this Court previously held that it has subject matter jurisdiction over the instant controversy, the City continues to vigorously argue that the Court should defer to the decision issued by the arbitration panel for the resolution of the Fire Plaintiffs' claims. To put the City's argument to rest, the Court will briefly revisit the basis of its jurisdiction decision. Additionally, the Court will extend that analysis to specifically reject the arbitration panel's authority to determine benefits for retirees.[13]
The MPAA and the FFAA "make available interest arbitration procedures to designated fire fighters and police officers of any city or town."Providence Lodge No. 3, 730 A.2d at 20. The general rule is that an interest arbitration panel has the authority to determine terms and conditions of employment. Westerly Lodge 10., 659 A.2d at 1005. "There is . . . no doubt that the provisions of an employee pension plan come within the meaning of `terms and conditions of employment'. . . . Accordingly, . . . the Arbitration Act grants [an arbitration] board the power to render a decision amending the policemen's and firemen's pension plans." Id. (quoting City of East Providence v. Local 850, Internat'lAssoc. of Firefighters, 117 R.I. 329, 335, 366 A.2d 1151, 1154 (1976)). "Since the city council has the right by ordinance to amend the COLA, we believe that an interest arbitration panel would have the power to determine what an appropriate COLA should be for the 1995-96 contract year." Providence Lodge No. 3, 730 A.2d at 19. See also Local 472,International Brotherhood of Police Officers v. Town of East Greenwich,635 A.2d 269 (R.I. 1993) (arbitration panel may adopt a COLA benefit for retired police officers when consistent with the enabling legislation).
"Interest arbitrators for the parties can do anything that the parties could have agreed to do." Westerly Lodge No. 10, 659 A.2d at 1106. "An arbitrator may . . . exceed his or her powers by interpreting a CBA in a way that contravenes state law or other public policies that are not subject to alteration by arbitration. Finally, an arbitrator is "powerless to arbitrate that which is not arbitrable in the first place."State Dept. of Children, Youth, and Families v. Council 94, 713 A.2d 1250,1253-54 (R.I. 1998) (quoting Rhode Island Brotherhood of CorrectionalOfficers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998)).
In the instant case, the City has suggested that an arbitration panel's authority extends beyond merely the determination of pension benefits for current employees to include the ability to determine the rights of retirees. The City's argument ignores the rationale advanced by the Court in support of its decision on jurisdiction. The Court predicated that decision on the rationale that retirees cannot be considered employees for purposes of the MPAA/FFAA. Specifically, the Court reasoned that the Plaintiffs in the instant litigation are no longer fire fighters or police officers of the City of Providence. To reiterate, § 28-9.2-3(2) defines `police officer' as:
 "a full-time police officer from the rank of patrolman up to and including the rank of chief, including policewomen, of any particular police department in any city or town within the state."
Similarly, § 28-9.1-3(2) defines `fire fighters' as:
 "permanent uniformed members, rescue service personnel of any city or town, emergency medical services personnel of any city or town, any fire dispatchers of any city or town, and all employees with the exception of fire chiefs of any paid fire department in any city or town within the state. No assistant chief, deputy chief, battalion chief, captain or lieutenant shall be excluded from the collective bargaining solely by virtue of his or her title or position."
From the plain language of the statutes, it is wholly illogical to conclude that retirees are employees. Consequently, because the MPAA/FFAA provides interest arbitration as a remedy for only active employees, retirees are not within the scope of those acts. Because retirees cannot invoke interest arbitration, an arbitration panel cannot bind retirees by issuing decisions that fail to allow the retirees any meaningful representation yet purport to dictate their rights.
In Allied Chemical v. Pittsburgh Plate Glass Co.,404 U.S. 157, 172-73 (1971), the United States Supreme Court rejected a similar argument that retirees were employees such that they were members of the union's bargaining unit. In concluding that retirees cannot be classified as employees included in the bargaining unit, the Supreme Court stressed the obvious conflicting interests between current employees and retirees:
 "even if. . . . active and retired employees have a common concern in assuring that the latter's benefits remain adequate, they plainly do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit. Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits." Id. at 173.
Based on the distinction between retirees and employees, the Court held that a union has no statutory duty to bargain for retirees; therefore, retirees cannot be forcibly subjected to union representation with respect to determination of pension rights. Id.
Considering the potential conflicts highlighted inAllied Chemical, the Court finds that the interest arbitration panel cannot arbitrate issues which exclusively affect retirees. Because retirees are no longer employees, they cannot avail themselves of the interest arbitration provisions of the MPAA/FFAA. As such, the Court finds that neither a union nor an arbitration panel may impose its will over a class of retired employees without either express statutory authority or consent of the retirees.[14] Given the retirees' opposition to and the Court's rejection of the Union's motion to intervene in the instant case, clearly, the Plaintiffs adamantly oppose the Union's representation of their rights. Consequently, the decision of the interest arbitration panel issued on April 4, 2005 has no bearing on the instant controversy. Therefore, the Court finds that the interest arbitration panel had no authority to issue a decision on pension benefits because it has no jurisdiction over the retirees. As such, the Court again rejects the City's suggestion that it defer to the decision of the interest arbitration panel with respect to the rights of the Fire Plaintiffs.
 CONCLUSION
The Court finds that it has exclusive jurisdiction to determine the status of Plaintiffs' legal right to the disputed COLA benefit. In response to the evidence presented, the Court declares that the Plaintiffs are entitled to a COLA benefit which corresponds with the terms and conditions of Ordinance 1991-5, the document which controlled their rights at the time of their retirement in the absence of a valid and enforceable CBA. Furthermore, because the right to the COLA percentage set forth in Ordinance 1991-5 vested at the time they retired in good standing, the City Council has no authority to reduce the vested COLA benefit through the passage of Ordinance 1995-17. The COLA reduction affected by Ordinance 1995-17 can only apply prospectively to those former members of the Providence Police and Fire Departments who retired after the enactment of that Ordinance. Finally, given the Court's exclusive jurisdiction over the instant controversy, the decision issued by the interest arbitration panel on April 4, 2005 has no bearing or effect on this Court's declaration of the Plaintiffs' rights.
Counsel shall prepare and submit an appropriate order.
[1] The text of P.L. 1990, ch. 212, § 1 reads as follows: "The city of Providence is hereby authorized and empowered to modify the employees' retirement system of the city of Providence which was originally established by P.L. 1923, Chapter 489, entitled "An Act to Provide for the Retirement of Employees of the City of Providence", as it applies to members of the Police Department of the City of Providence, to provide for the following:
 (a) In lieu of the current 3% noncompounded cost-of-living adjustment, a 3½% compound cost-of-living adjustment for members of the Police Department who retire(d) after July 1, 1989, a 4½% compounded cost-ofliving adjustment for members of the Police Department who retire(d) on or after July 1, 1990, and a 5% compound cost-of-living adjustment for members of the Police Department who retire(d) on or after June 30, 1991, and
 (b) Effective July 1, 1989, the percentage contribution required of members of the Police Department immediately prior to said date shall be increased by three-quarters of 1% and effective July 1, 1990, an additional three-quarters of 1%."
[2] The text of P.L. 1990, ch. 469, § 1 reads as follows: "The City of Providence is hereby authorized and empowered to modify the Employees' Retirement System of the City of Providence which was originally established by P.L. 1923, Chapter 489, entitled "An Act to Provide for the Retirement of Employees of the City of Providence", as it applies to members of the Fire Department of the City of Providence, to provide for the following:
 (a) In lieu of the current three percent (3%) noncompounded cost-of-living adjustment, a four percent (4%) compounded cost-of-living adjustment for members of the Fire Department who retire after July 1, 1990, a five percent (5%) compounded cost-of-living adjustment for members of the Fire Department who retire on or after July 1, 1991, and
 (b) Effective July 1, 1990, the percentage contribution required of members of the Fire Department immediately prior to said date shall be increased by three-quarters of one percent (3/4 of 1%) and effective July 1, 1991, an additional three-quarters of one percent (3/4 of [sic] 1%)."
[3] Section 28-9.2-9(d) reads in relevant part: "A majority decision of the arbitrators is binding on both the bargaining agent and the corporate authorities." `Corporate authorities' are defined as "the proper officials within any city or town whose duty or duties it is to establish the wages, salaries, rates of pay, hours, working conditions, and other terms and conditions of employment of police officers, whether they are the mayor, city manager, town manager, town administrator, city council, town council, director of personnel, personnel board or commission, or by whatever other name they may be designated, or any combination thereof." § 28-9.2-3(1) (emphasis added).
[4] Vincent A. Cianci served five terms as mayor of the City of Providence that spanned the years 1975-1984 and 1990-2002. Joseph Paolino held the office of mayor during the interim years of 1984-1990.
[5] C.A. No. 01-2223.
[6] C.A. No. 01-2224.
[7] See also R.I. Const. art. XIII, § 4: "The general assembly shall have the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town."
[8] It should be noted that the selection of either the last ratified contract or Ordinance 1991-5 has the same practical effect for purposes of the initial inquiry, because both provide for a 5% compounded COLA upon retirement.
[9] Although the Plaintiffs acknowledge that this Court distinguished Warwick on the basis of the factors quoted above, the Plaintiffs point to a quote from the jurisdiction decision which left the door open for its potential relevance to a decision on the merits: "The Court leaves an examination of the merits for another day. Although this Court may ultimately conclude that the Warwick case has bearing on the kind of declaration to which the Police and Firefighter Plaintiffs are entitled, the case does not support the City's contention that the Court lacks jurisdiction to entertain a declaratory judgment action." Abad v. Cityof Providence, 2004 R.I. Super. LEXIS 174 at *34.
[10] The Court also notes that by the conclusion of oral arguments on this subject, counsel for both the Plaintiffs and the City agreed that the Ordinance should apply to the Police Plaintiffs. See Hearing Transcript ofMarch 10, 2005, at p. 16, ll. 2-18.
[11] Ordinance 1996-4 retains the language that classifies the COLA benefit as gratuitous.
[12] In its jurisdiction decision, this Court stated: "it would appear that the Plaintiffs' former unions do not have standing to pursue interest arbitration on behalf of retired former employees; however, this Court makes no ruling on that issue. The Court understands that subsequent to the commencement of these actions, the City and the Firefighter Plaintiffs' former union agreed to engage in interest arbitration which is ongoing. This development neither impacts the Firefighter Plaintiffs' standing before this Court nor the Court's jurisdiction under the Declaratory Judgments Act." Abad, 2004 LEXIS 174 at *32, n. 3.
[13] When Local 799 of the IAFF attempted to intervene, Magistrate Keough denied the motion on the basis of the Supreme Court's holding in AlliedChemical.
[14] The circumstances of the instant case differ markedly from the facts presented in Westerly Lodge No.10. In that case, the arbitration panel provided the retirees with a pension escalator which increased the total retirement allowance. Unlike the instant case, the pension escalator was not a vested benefit for those retirees because it was not part of the retirees' retirement allowances at the time they retired. Consequently, the interest arbitration panel retroactively provided the retirees with a gratuitous benefit. In the instant case, the interest arbitration panel assumed the authority to retroactively decrease a vested benefit.